[Civ. No. 2287. Fourth Appellate District.—April 11, 1940.]

SOPHIE BARSOOM, Respondent, v. CITY OF REEDLEY (a Municipal Corporation), Appellant.

C. W. Tackaberry and Bronson, Bronson & McKinnon for Appellant.

W. H. Stammer and Galen McKnight for Respondent.

MARKS, J.—This is an action to recover damages for injuries received by plaintiff when she fell from a curb into a public street of the City of Reedley. A verdict was returned in favor of all the individual defendants and against the city. This appeal from the judgment followed.

The City of Reedley is a municipal corporation of the sixth class organized and existing under the Municipal Corporation Act. (Stats. 1883, p. 93, as amended.) Defendants Carlisle, Smith, Neufeld and Cree were members of the city council. L. C. Gregg was superintendent of streets and C. E. Skidmore was city engineer and superintendent of the municipal water works.

Tenth Street is a public street in the City of Reedley. It runs easterly and westerly and has curbs on both sides which rise seven inches above the gutters. It is intersected at right angles by "G" and "F" Streets, the former forming the westerly and the latter the easterly boundaries of a block. An alley parallels these streets and bisects the block. A moving picture theatre occupies the northerly side of Tenth Street, extending from the alley to "F" Street, with its entrance on Tenth Street at the corner of "F" Street. There are electroliers on the southerly side of Tenth Street at the intersections with the alley and "F" Street.

During the summer of 1937 the City of Reedley planned to extend its municipal water system, receiving aid in the project from the Works Progress Administration. Black ten-inch cast iron water pipe in eighteen-foot sections was purchased and strung out, end to end, along the southerly curb line of Tenth Street. The pipe had an outside diameter of over eleven inches with a bell on one end which had an outside diameter of over twelve inches. Thus the top of the pipe, as it rested against the curb, rose between four and five inches above it. The pipe was placed along the curb by employees of the city under the direction of Skidmore who was in charge of the work. At least some, if not all, of the members of the city council had actual knowledge of the position of the pipe in the street shortly after September 1, 1937. Thus the city must be held to have had notice of the condition on the public street which was created by the water pipe

along the curb. (*Boyce* v. *San Diego H. S. Dist.*, 215 Cal. 293 [10 Pac. (2d) 62].)

About September 10, 1937, the Works Progress Administration temporarily withdrew its support from the project and the water pipe lay along the curbing on Tenth Street until about March 30, 1938.

During the evening of November 22, 1937, plaintiff, her husband, their daughter and two of her girl friends, decided to attend the picture theatre at the corner of Tenth and "F" Streets. The night was clear but dark. They left their home in the family automobile with Mr. Barsoom driving, Mrs. Barsoom on the front seat at his right and the three girls on the rear seat. They first drove easterly on Tenth Street where they made a "U" turn at "F" Street, then back past the theatre westerly on Tenth Street but found no vacant parking place. They made another "U" turn at "G" Street, returning easterly on the southerly side of Tenth Street to a point on the southerly side of that street about midway between the alley and "F" Street where there was a vacant parking place. Mr. Barsoom parked the car diagonally to the curb with its right front wheel against the water pipe and turned off the lights. There was an automobile already parked diagonally to the curb at his left. Mrs. Barsoom did not see the water pipe along the curb and no one called her attention to it. She had no prior knowledge that there was water pipe resting against the curb on any street in the city.

Mr. Barsoom alighted through the left door of the car and Mrs. Barsoom through the right. Just as she reached the pavement another automobile came up and parked diagonally to the curb to the right of the Barsoom car. Its headlights were illuminated and she then saw the water pipe lying against the curb to the right of her husband's automobile. She slammed the door of the car shut and hurried to the sidewalk to avoid the automobile which was being parked, stepping on the pipe during her progress. The headlights of this car were then turned off leaving that portion of the curb line in darkness.

Mrs. Barsoom described her subsequent movements and the accident as follows:

"Q. Now, after you got up on the sidewalk there, what did you do? A. Well, I forgot my coat. I walked around

the other side of the car. While I was stepping down something caught my feet and I fell down very bad. . . . Q. When you started to step down. A. While I was stepping down my feet caught and I fell down. Q. Now, did you just step right down off the curb? A. Well, it happened so quick I do not know. While I was stepping, something caught my feet and I fell down. . . . Q. Have you any recollection of where they were, what they were doing when you got up onto the sidewalk? A. No sir. As soon as I got down from the sidewalk—as soon as I stepped down, another car came to park next to our car and I shut the door quickly and I saw the pipe was there because that light, that I saw the pipe was there. I stepped on the pipe and got on the sidewalk. . . . Q. Mrs. Barsoom, when you went to step down off the sidewalk at the time that you had your fall, did you intend then to step on the pipe or to step over it? A. I did not know. I did not know whether—it was dark, see, while I was stepping down something caught my feet and I fell down. . . . Q. Let me ask you this, Mrs. Barsoom: Before you went to step down did you look to see if the pipe was there, if it extended that far? A. No. I just walked around to get down. While I was stepping down something caught my feet and I fell down. It was dark. You can not see it. Q. Let me ask you this: Before you left the curb to step on the street did you try and look to see if the pipe was there, or if it extended that far? A. No, I did not stop. I just—I came to step down to get my car, and get my coat. . . . Q. Before you stepped down to get your coat, did you look? A. Look? It is dark. You can not see anything. What am I going to look? I am trying to get down. . . . Q. Well, it was dark there, was it, where the pipe was in the gutter? A. Yes, sir. Q. But did you try to see if the pipe was there? Did you look there for the purpose of determining in your own mind if the pipe extended that far or not? A. No. No.''

The city presents three grounds on which it relies for a reversal of the judgment: (1) That plaintiff was guilty of contributory negligence as a matter of law; (2) that the evidence is insufficient to support the verdict and judgment because it was not shown that the water pipes along the curb proximately caused plaintiff to fall into the street; (3) that the verdict in favor of the individual defendants is inconsis-

tent with the verdict against the city. A proper considera-
tion of some of these questions requires a brief summary of
the pleadings.

The complaint contains two causes of action. It is ad-
mitted that the first is based on the alleged negligence of all
of the defendants which occurred in connection with the
operation of the municipal water works in the proprietary, as
distinguished from the governmental capacity of the city,
under which circumstances there would be a liability for
negligence. (*Davoust* v. *City of Alameda*, 149 Cal. 69 [84
Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536]; *South
Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal. 579 [93
Pac. 490]; *Chafor* v. *City of Long Beach*, 174 Cal. 478 [163
Pac. 670, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685].) The
city maintains, and plaintiff does not deny, that the second
cause of action, where plaintiff seeks recovery against the in-
dividual defendants, is brought under what we will call the
Public Officers Liability Act (Stats. 1919, p. 756) and where
it seeks recovery against the city it is brought under the
Public Liability Act. (Stats. 1923, p. 675.) It is clear that
the second cause of action is based on an alleged dangerous
condition of Tenth Street caused by permitting the water pipe
to remain against the curb for an unreasonable time and with-
out taking any sufficient precautions to protect the public
against the danger. As the maintenance of a public street is
a governmental function of a city, recovery under the second
cause of action is limited by the two statutes we have just
cited.

On the question of the warning given of the danger caused
by the water pipe, the evidence discloses that the electric
lights on Tenth Street were illuminated. Witnesses for de-
fendants testified that at the time of the accident there were
four red lanterns burning along the south side of Tenth Street
in the block in question. Mr. Barsoom testified there was
only one of these lanterns burning, the one at the corner of
Tenth and "F" Streets. Plaintiff produced evidence to the
effect that the light from the two electroliers was so shadowed
by obstructions that it was dark at the point of the accident
and the black water pipes could not be seen. In accordance
with the time-honored rule that, on appeal, conflicts in the evi-
dence must be resolved in favor of the support of the verdict

and judgment, we must accept, as true, the evidence offered by plaintiff on these questions.

The argument that plaintiff was guilty of contributory negligence as a matter of law is based on her testimony that she saw the water pipe along the curb on the right side of her family car in the headlights of the car which was being parked there; that this was a sufficient warning of a danger along the curb so that she should not have stepped off the curb on the left side of her car without ascertaining if a similar danger existed there. Under the circumstances here disclosed, the question of contributory negligence is one of fact to be decided by the jury. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513]; *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118]; *Castro* v. *Sutter Creek Union H. S. Dist.*, 25 Cal. App. (2d) 372 [77 Pac. (2d) 509].) As the verdict of the jury impliedly found plaintiff free from contributory negligence, we cannot disturb that finding here.

The city argues that as plaintiff did not testify in so many words that her feet caught on the water pipe there was no sufficient evidence to show that the pipe in the gutter was the proximate cause of her injury. We cannot agree with this argument. Plaintiff testified that her feet caught on something. The water pipe was lying against the curb and protruded more than four inches above its top at the point of the accident. There was no other obstruction there upon which her feet could have caught. The inference drawn by the jury, that she tripped over the water pipe, is reasonable. On appeal, where opposing inferences may reasonably be drawn from the evidence, it is the duty of an appellate court to draw that inference which supports the judgment. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123].) Therefore, we must agree with the reasonable inferences drawn by the jury, that the water pipe along the curb created a dangerous condition in the public street, and that such dangerous condition was the proximate cause of the injuries suffered by plaintiff.

It is admitted that defendants gave some warning of the dangerous condition existing on Tenth Street. Whether or not the warning given was such "as may be reasonably necessary to protect the public against such dangerous or defective condition" (Stats. 1923, p. 675) was a question of

fact addressed to the jury. (*Bigelow* v. *City of Ontario,* 37 Cal. App. (2d) 198 [99 Pac. (2d) 298].) Under the rules just considered we cannot disturb the implied finding of the jury on that question.

The city contends that the verdict finding in favor of the individual defendants and against the city operates to free the city from liability under the well-settled rule that where recovery of damages is sought against a principal and an agent, and where the negligence of the agent is the cause of the injury, and the liability of the principal is solely by reason of the doctrine of *respondeat superior,* a verdict releasing the agent from liability releases the principal. (See *Bradley* v. *Rosenthal,* 154 Cal. 420 [97 Pac. 875, 129 Am. St. Rep. 171]; *Fimple* v. *Southern Pac. Co.,* 38 Cal. App. 727 [177 Pac. 871]; *Tolley* v. *Engert,* 71 Cal. App. 439 [235 Pac. 651].) The foregoing rule is firmly established and may not be questioned. Under the allegations of the second cause of action and the evidence, this rule is not applicable here for the following reasons: The liabilities of the individual defendants and the city are separately created by separate statutes. They are primary liabilities, and the liability of the city is not based on the doctrine of *respondeat superior.* Under the Public Officers Liability Act additional allegations of a complaint are required to state a cause of action against the individual defendants than are required to state a cause of action against the city under the Public Liability Act. (*Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083]; *Shannon* v. *Fleishhacker,* 116 Cal. App. 258 [2 Pac. (2d) 835].) There is also a difference in the proof required of a plaintiff to make out a *prima facie* case of liability against the individual defendants and against the city.

Where, as here, there is a primary liability on the part of a principal, and the principal owes a duty directly to the plaintiff, and the principal's liability does not depend on the doctrine of *respondeat superior,* a verdict in favor of the agents is not inconsistent with a verdict against the principal and will not render the latter void. (*Waltemath* v. *Western States Realty Co.,* 9 Cal. App. (2d) 583 [50 Pac. (2d) 451]; *McCullough* v. *Langer,* 23 Cal. App. (2d) 510 [73 Pac. (2d) 649].)

The precise question we are considering was decided in the case of *Adams* v. *Southern Pac. Co.*, 4 Cal. (2d) 731 [53 Pac. (2d) 121]. In that case recovery of damages resulting from a death on a dangerous street was sought against certain officers of San Bernardino County and also against the county. Judgment went in favor of the officers and against the county. These judgments were affirmed on appeal. (*Adams* v. *Southern Pac. Co.*, 109 Cal. App. 728 [293 Pac. 681]; *Adams* v. *Southern Pac. Co.*, 4 Cal. (2d) 731 [53 Pac. (2d) 121].) In the second case it was held that the judgment in favor of the officers was not a bar to the judgment against the county.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 6, 1940.