[Civ. No. 21952.   Second Dist., Div. Three.   Oct. 7, 1957.]

MATHEW LEHMANN, a Minor, etc., et al., Appellants, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Respondents.

Stanley A. Phipps for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), William E. Lamoreaux, Assistant County Counsel, Wayne Veatch, Henry R. Thomas and Henry F. Walker for Respondents.

SHINN, P. J.—The plaintiffs in this action are Mathew Lehmann, suing by his guardian *ad litem*, and his mother, Carol R. Bottorff. The defendants are Los Angeles City Board of Education, Los Angeles City High School District of Los Angeles County, Allen Campbell and Frank Fukuzawa. The action is for damages resulting from an injury sustained by the minor, in the course of his education and training, when his hand was caught in a printing press in the workshop of

the Emerson Junior High School. The basis of the claim is negligence of the defendants in maintaining and permitting the operation of the press without a safety device, in claimed violation of regulations of the Division of Industrial Safety (8 Cal. Admin. Code, §§ 3600, 3602, 3660). The principal question on the appeal is whether the regulations were applicable to the defendants.

Plaintiffs requested and the court refused an instruction which, except for unimportant deviations, was in the language of the three sections.[1]

Defendants maintain that the instruction was properly refused for the reason that the mere reading of it, without com-

---

[1]"SECTION 3600

"GUARDING REQUIRED. (a) Machines as specifically listed hereafter, having a grinding, shearing, punching, pressing, squeezing, drawing, cutting, rolling, mixing or similar action, in which an employee comes within the danger zone shall be guarded at the point of operation in one of the ways specified in the following orders, or by other means or methods which will provide equivalent protection for the employee.

" (b) All machines or parts of machines, used in any industry or type of work not covered herein, which are of a similar character to the machines covered under these point of operation orders, shall be guarded at their point of operation in a manner as generally indicated in this Group 5.

"SECTION 3602

"GENERAL DEFINITIONS. (a) CLASSES. The designation 'Class-A' with an order means that the rule applies for all kinds of work. The designation 'Class-B' means that the order applies unless the nature of the work, type of machinery, or size and shape of material being worked will not permit.

" (b) DANGER ZONE. Danger zone means any place at or near the point of operation, where an employee may be caught by or between the moving parts of the machine or between moving and stationary parts of machine, or between the material and the moving part or parts of the machine.

" (c) POINT OF OPERATION. Point of operation means that part of a machine which performs an operation on the stock or material and/or that point or location where stock or material is fed to the machine. A machine may have more than one point of operation.

"SECTION 3660

"JOB PLATEN PRESS (CLASS B). Job platen presses with or without mechanical power shall be provided with one of the following:

" (a) An automatic feed which does not require the operator's hands to be placed between the platen and bed, or

" (b) An automatic stop which will prevent the platen from closing if the hand or hands of operator are caught between the platen and the bed, or

" (c) A guard or gate, mechanically operated, which will throw the operator's hands out of the way as the press closes. If of the type which lifts the hand out of the danger zone the guard shall rise at least four inches above the platen as the press closes and descends by gravity or be drawn down by springs. The guard shall be arranged so that it will prevent a shear between the guard and the top of the platen, or

" (d) Any other device that will prevent the platen from fully closing, if the hands of the operator should be between the platen and bed."

plementary instructions, would have been meaningless and confusing to the jury. No doubt there was surplusage in the instruction, but this is true of most instructions that are not patterned to fit the particular facts of the case. It will appear from our views, stated hereafter, that since the facts were not in dispute a proper form of instruction would have been one which stated simply that the law required that the press should have had a safety device of a sort prescribed by the regulations. But, had the instruction been given, we do not believe the jury would have failed to understand that failure to comply with the regulations would have constituted a breach of duty.

■ Ordinarily an instruction based upon violation of law as evidence of negligence should be accompanied by an instruction that the violation is only prima facie evidence of negligence and in certain circumstances may be found to have been reasonable and free from negligence. Although no such instruction was requested by plaintiff we do not regard that omission as a sufficient reason for refusing the requested instruction. Plaintiffs' offer in evidence of the safety orders was the subject of extensive debate in chambers, at the conclusion of which the court sustained the objections of the defendants and ruled that the orders were not applicable to the school district. Under these circumstances plaintiffs should be held excusable for not offering a complementary instruction. Moreover, defendants have not suggested a theory upon which the failure to install a safety device, if one was required, would have been excusable, at least as to the board and the district. Inasmuch as the regulations were held inapplicable there was no occasion to offer evidence purporting to excuse their nonobservance, and in the absence of such evidence there would have been no reason for a request by either party for an instruction.

The instruction was refused upon the ground, urged by defendants, that the regulations were inapplicable to the defendants, for two reasons (a) they are only for the protection of employees, and (b) they do not apply to school districts.

■ The first ground, elaborately argued in the briefs, has been waived by defendants since the decision in *Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846 [313 P.2d 854], that safety regulations are intended to afford protection to the general public in places of employment.

In support of the second ground it is argued that the regulations are not expressly made applicable to government, and

should be held applicable only to nongovernmental entities, for the reason that legislative enactments, not expressly directed to the sovereign, are presumed to speak to the citizen alone, unless the state and its agencies are included by necessary implication.

Defendants rely upon a well settled rule which we had occasion to state in *Nutter* v. *City of Santa Monica*, 74 Cal. App.2d 292, at 300 [168 P.2d 741], as follows: ''Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government. In making that determination, it is proper to consider all matters which, under the rules of statutory interpretation, shed light upon the legislative intention. It is well established that general terms of a statute will not be construed as including government if the statute would operate to trench upon sovereign rights, injuriously affect the capacity to perform state functions or establish a right of action against the state. (Citations.)''

Although defendants invoke this rule they do not point out how enforcement of the safety regulations would displace or infringe upon any of the functions that have been expressly or by necessary implication delegated to school districts.

In order to ascertain the implications of the regulations our inquiry is directed to the breadth of the purposes which the enactment is designed to accomplish.

It was thought for some time that the regulations of the Division of Industrial Safety were devised for the sole purpose of imposing duties upon employers for the exclusive benefit of their employees. Some of the decisions so held. It is now settled that the regulations have a broader purpose, and that this could not be accomplished without construing them as applicable to the general public, as declared in the Porter case.

The primary purpose of the regulations of the Division of Industrial Safety is for the protection of employees, and while they no doubt are inapplicable where conditions of employment do not exist, it would seem that whenever they do exist the regulations are applicable unless there is to be found in them or in applicable law a purpose to exclude certain conditions. The only conditions that are excepted are those specified in section 6302, Labor Code, which makes the regulations inapplicable to ''a place the safety jurisdiction over which is vested by law in any State or Federal agency other than the division.''

The very nature of the problem explains the legislative purpose. The clear implication is that it was the legislative intention to require the use of safety measures in all places of employment. Presumably they are provided by regulations of all federal and state agencies vested by law with safety jurisdiction. The exclusion of those state agencies from the operation of the regulations of the division means that it was the intention to make them applicable to conditions of employment under state agencies, other than those excepted. There could be no reason for having safety measures in some places of public employment and not in others. ▮▮ Safety jurisdiction has not been vested in school districts so as to make adoption of regulations mandatory, and the possession of discretionary powers in that field, which may or may not be exercised by school districts, does not relieve them of the duty to conform to the uniform regulations of the division. The need for safety measures is the same in all situations in which the danger exists. The defendants, of course, do not contend otherwise.

School districts have employees. Defendant Allen Campbell was principal of the school and defendant Frank Fukuzawa was a teacher. The complaint alleged that they were employees of the school district and board of education and acting within the scope and course of their agency. These allegations were not denied by defendants.

The printing press in question was one to which the regulations would have been applicable in any private school or industrial establishment. If it was the legislative intention that protection should be enjoyed by the general public through compliance with the regulations, that intention would appear even more clearly where the danger would be to students in the use of unguarded machines. There is every reason for giving them protection equal to that enjoyed by members of the general public, and no reason deducible from the purpose to be accomplished for denying them that protection.

▮▮ Defendants contend that as to school districts the Division of Industrial Safety is without authority by virtue of the second paragraph of article IX, section 6 of the California Constitution, which reads: "The Public School System shall include all kindergarten schools, elementary schools, secondary schools, technical schools, and state colleges, established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them. No

school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System.''

Recognition of authority in the Division of Industrial Safety to make safety regulations applicable to places of employment in public schools as well as to all other places of employment not otherwise provided for would not be transferring a school or college or any other part of the public school system from the public school system, or placing it under the jurisdiction of the Division of Industrial Safety.

The division of Industrial Safety and the public school system occupy entirely different fields. As long as each keeps within its own field there can be no interference with the powers and duties of the other. Measures adopted for the general safety and welfare of all citizens do not create a conflict between the jurisdiction within which the school system functions and the police powers of the state. The constitutional provision is inapplicable in the present case.

Plaintiff complains of two instructions given at the request of defendants which stated that the cause of action, if any, of plaintiff against the school district, is based upon and must meet the requirements of the Public Liability Act. (Now Gov. Code, tit. 5, div. 2, art. 3.) The instruction quoted the language of section 2 of the Act of 1923. (Stats. 1923, ch. 328, p. 675.)[2] That section does not differ from sections 53050 and 53051 of the Government Code with respect to the duty to remedy a known dangerous or defective condition and to remedy the same, except in one respect, namely, the 1923 statute imposed liability if within a reasonable time after receiving notice of the dangerous or defective condition the responsible person ''failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable

---

[2]''Sec. 2. Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition,'' whereas, section 53051 imposes liability if the person authorized to remedy the condition ''for a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.''

It is immaterial that the instructions were in the language of the Public Liability Law instead of the Government Code sections. The point is that the instructions relieved the school district of its liability for general negligence under section 1007, Education Code,[3] and were in conflict with other instructions which imposed upon all defendants the duty of exercising ordinary care. Proper instructions, based upon section 1007, were given at the request of plaintiff. Negligence was defined in instructions requested by all parties. Defendants do not now contend that the only basis of liability of the district would have been failure to comply with sections 53051 et seq., Government Code. They argue that the verdict in favor of all defendants implies that the individuals were found to have been without fault and that without negligence on their part the district could not have been negligent. It is therefore contended that plaintiff suffered no prejudice.

It was error to give the instructions. The jury should not have been instructed with respect to the so-called Public Liability Law. The instructions should have been drafted to fit the facts of the case. The practice of using abstract, general instructions seems to be developing either an inability or unwillingness, or both, to pin point the factual issues in the case, and frame simple, clear, and understandable instructions to fit them. Here, general instructions on negligence were necessary because the court refused the requested instructions as to application of the safety regulations. The question of negligence, then, was whether defendants failed to exercise ordinary care in maintaining and permitting the use of the

---

[3] ''The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers, or employees in any case where a verified claim for damages has been presented in writing and filed with the secretary or clerk of the school district within ninety (90) days after the accident has occurred. The claim shall specify the name and address of the claimant, the date and place of the accident, and the extent of the injuries or damages received.''

press without a safety device. A fact bearing upon this question was that another press used by the students had a safety device. Defendants produced expert testimony substantially to the effect that safety devices on such presses were not standard equipment or in general use. The verdict implies that defendants were found free from negligence in failing to provide a safety device. ■ Under the circumstances it was error to instruct as to the Public Liability Law for the reason that the only claim of negligence was the failure to provide a safety device for the press. The school district was responsible for the absence of the safety device and could not deny knowledge of the condition which it created in providing an unguarded press for the use of the students. If there was a violation of the safety regulations the questions whether the condition was dangerous or defective and whether the responsible officers had knowledge or notice of the condition should not have been submitted to the jury. The safety regulations answer the first question. The fact that the district caused the condition to exist answers the second. Violation of the safety regulations, considered alone, was negligence. Upon a retrial the jury should be so instructed. We can conceive of no reason, founded on the evidence now before us, for an instruction that violation of the safety regulation could be found to have been justifiable, excusable or consistent with the exercise of due care.

The question of the liability of the individual defendants has not been argued separately from the question of liability of the district, except by pointing out that those defendants were not chargeable with a duty to provide a safeguard for the press. As to the sufficiency of the evidence to establish liability of the individual defendants we express no opinion.

No other point is discussed in the briefs.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied November 6, 1957, and respondents' petition for a hearing by the Supreme Court was denied December 4, 1957. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.