[L. A. No. 25620. In Bank. Feb. 5, 1960.]

CHARLES LEHMUTH, JR., as Guardian, etc., et al., Respondents, v. LONG BEACH UNIFIED SCHOOL DISTRICT, Appellant.

[L. A. No. 25621. In Bank. Feb. 5, 1960.]

MARCEL V. NARET, a Minor, etc., et al., Respondents, v. LONG BEACH UNIFIED SCHOOL DISTRICT, Appellant.

Moss, Lyon & Dunn, Gerald C. Dunn, C. Ransom Samuelson, Harold W. Kennedy, County Counsel (Los Angeles), Lloyd S. Davis and Edwin P. Martin, Deputy County Counsel, and Henry F. Walker, for Appellant.

Joseph A. Ball, James J. Baker, Alfred D. Williams, Madden & McCarry and Thomas F. McCarry for Respondents.

McCOMB, J.—Defendant Long Beach Unified School District appeals from (a) judgments in favor of plaintiffs and (b) orders denying its motions for judgments notwithstanding the verdicts, in actions for personal injuries sustained by plaintiffs[1]

*Facts*: Defendant Long Beach Unified School District (hereinafter referred to as "the district") was organized as such (see Ed. Code, §§ 4621, 4627, 4629), and within its territorial confines there was established Long Beach City College (hereinafter referred to as "the college"). The college is a public junior college owned, controlled and operated by the district (see Ed. Code, §§ 4232, 8702). It is staffed by a faculty and

---

[1] These personal injury actions were consolidated for trial and are presented here upon a single record and a single set of briefs.

others who are employees of the district. A single board of trustees governs both the district and the college.[2]

Viewing the evidence in the light most favorable to plaintiffs, the record discloses that Gordon J. Gearhart and Ed Leibowitz were employed as assistant technicians on the public address crew of the Associated Student Body of Long Beach City College (hereinafter referred to as "the student body"). Donald Schmidt was head technician. All three were students at the college.

The student body had arranged a homecoming parade upon the streets of Long Beach for the evening of November 10, 1955. The parade was conducted under the supervision of faculty members of the college. Gearhart was directed to handle the sound trailer with the assistance of Leibowitz. This trailer had been purchased with funds of the student body, but was registered in the name of the college. It was to be taken to Buffum's store and there plugged into an electrical outlet so that the floats could be announced as they passed by. Gearhart, who had borrowed his uncle's automobile for use in towing the trailer, hitched the trailer to the car, using a new hitch which had been furnished by the dean of activities of the college.

Gearhart had worked on four previous occasions when this sound trailer was towed upon a highway; and on November 10 he hitched it to the automobile in the same manner as had been done on previous occasions. No safety chain was used on November 10 or on those previous occasions, as required by section 701, subdivision (e), of the Vehicle Code.[3] (Vehicle Code citations are to sections as numbered prior to the 1959 recodification.)

---

[2]The relevant sections of the Education Code are as follows: Section 4365 states: "A junior college district formed to comprise a single unified school district shall be considered a junior college district only for the purposes of State apportionments and nonresident county junior college tuition. For all other purposes it shall be considered an integral part of the unified school district and shall be governed by the governing board of the unified school district."

Section 4381 gives the superintendent of schools in the county in which junior colleges are located jurisdiction over all matters in which his office is concerned; and section 4627 provides: "The governing board of each unified school district shall have the same powers and duties as are by law granted to the governing boards of the elementary school districts, the high school districts, and the junior college districts merged into, or otherwise included within, the unified school district."

[3]Section 701, subdivision (e), reads in part: "Every towed vehicle shall be coupled to the towing vehicle by means of a safety chain, chains, cables, cables or equivalent devices in addition to the regular trailer

Gearhart had never seen a safety chain in the trailer or anywhere else, nor had he been told to use one; the subject had not been mentioned to him. He did not know that it was customary or necessary and had no information about the statutory provision.

As the sound trailer was being towed along Ocean Avenue on its way to Buffum's store, it hit a rough place in the street caused by some excavation work, broke loose, went over the curb, and hit plaintiffs Virginia A. Lehmuth and Marcel V. Naret, who were looking into a photographer's window, seriously injuring them. Plaintiffs were students of the college. They sued the district, the student body and Gearhart.

The jury returned verdicts in favor of Gearhart and the student body, while assessing damages against the district (a) in favor of plaintiff Naret for $10,178, which was reduced on motion for a new trial to $5,178, and (b) in favor of plaintiff Lehmuth in the sum of $277,844.

These questions are presented:

■ First. *Did the verdicts in favor of Gearhart and the student body exonerate the district from liability?*

*No.* The district contends that its liability for the acts of Gearhart was derivative or secondary and that the verdicts exonerating Gearhart and the student body operated to free it from liability. The district relies upon the well-settled rule that where recovery of damages is sought against a principal and an agent, and the negligence of the agent is the cause of the injury, a verdict releasing the agent from liability releases the principal. (*Bradley* v. *Rosenthal,* 154 Cal. 420, 423 [97 P. 875, 129 Am.St.Rep. 171]; *Bishop* v. *Superior Court,* 59 Cal.App. 46, 49 [209 P. 1012].)

The foregoing rule is not applicable to the facts of the present case, since it was not tried upon the theory of *respondeat superior* and the jury was so instructed. The liability of the district is a primary one created by statute and is entirely separate from that of Gearhart.

Sections 16141 and 16142, respectively, of the Education Code direct: ''The governing board of any school district may authorize any organization composed entirely of pupils

hitch or coupling. . . . No more slack shall be left in safety chains, cables, or equivalent device than shall be necessary to permit proper turning and the safety chains, cables or equivalent device shall be so connected to the towed and towing vehicle and to the drawbar to prevent the drawbar from dropping to the ground if the drawbar fails and shall be of sufficient strength to control the trailer in event of failure of the regular trailer hitch or coupling.''

attending the schools of the district to maintain such activities as may be approved by the governing board. . . . (§ 16141.)

"Any group of students may organize a student body association within the public schools with the approval and *subject to the control and regulation of the governing board of the school district.* Any such organization shall have as its purpose the conduct of activities on behalf of the students approved by the school authorities and not in conflict with the authority and responsibility of the public school officials. *Any student body organization may be granted the use of school premises and properties without charge subject to such regulations as may be established by the governing board of the school district.*" (§ 16142.) (Italics added.)

In addition, section 1007 of the Education Code provides in part: "The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers, or employees in any case where a verified claim for damages has been presented."[4]

Section 1007 of the Education Code is in *pari materia* with section 400 of the Vehicle Code, which imposes upon school districts, as well as other public agencies owning any motor vehicle, liability for injuries caused by the negligent operation of such motor vehicle by an officer, agent or employee. This liability is not limited to occurrences upon the school grounds. (*Satariano* v. *Sleight,* 54 Cal.App.2d 278, 284 [6a] [129 P.2d 35]; *cf.* 160 A.L.R. 157; *Lehmann* v. *Los Angeles City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55].)

Thus, it clearly appears that the governing board of the district had a primary duty to reasonably supervise the members of the student body while they were on the school grounds and while they were using school property

---

[4] Section 1007 of the Education Code stems from section 1623 of the Political Code, which was reenacted in 1931 into sections 2.800 to 2.806, inclusive, of the School Code, with an important change in language. The old section restricted liability to "a pupil," while the new section enlarged this to liability "to person or property" without the former limitation. This would seem to extend the liability to all damages to persons or property caused by the ordinary negligence of the district, its officers or employees acting within the scope of their office or employment. (*Bates* v. *Escondido U. H. School Dist.,* 133 Cal.App. 725, 730 [3] [24 P.2d 884] [hearing denied by the Supreme Court].)

upon the public streets. The standard of care required of the governing board is that which a person of ordinary prudence, charged with its duties, would exercise under the same circumstances. (*Pirkle* v. *Oakdale Union etc. School Dist.*, 40 Cal.2d 207, 210 [1] [253 P.2d 1].)

From the evidence deduced during the trial, the jury could have reasonably inferred that the district did not use ordinary prudence in carrying out its duty to properly supervise the members of the student body, in order to guard members of the public against their youthful impetuosity and lack of judgment when their activities came in contact with the public. As indicated above, the faculty and other members of the college staff were employees of the district; and the student body, though a separate entity in one sense, was subject to their supervision. Mr. Orian M. Landreth was dean of activities of the college, having supervision over all student activities outside the classroom. Participating students earned credits for such activities, just as they did for their intellectual pursuits.

The district introduced testimony of former students, who had done similar towing work, to the effect that safety chains were used and were kept in the trailer. The head gardener of the college said they were hanging on the wall of the shack where the trailer was kept. Messrs. Schmidt, Gearhart and Leibowitz testified that they were not furnished with any chain, did not use one, and never saw one and that the subject was never mentioned to them.

Section 701, subdivision (e), of the Vehicle Code, which was not complied with, was directed toward safety of the public and was intended to prevent just such an occurrence as that which gave rise to the present actions. Had a safety chain "of sufficient strength to control the trailer in event of failure of the regular trailer hitch" been employed, as directed by section 701, subdivision (e), the injuries which were inflicted upon the plaintiffs probably would not have occurred.

Since one of the district's normal activities is the furnishing to students for use upon the public highways of sound trailers which must be hitched to a towing vehicle, it would seem that the subject of safety chains was of sufficient importance to require specific supervision by the district's employees. When the district, through negligent supervision, permitted a tow car and trailer upon a public street

without equipping them with the statutorily prescribed device of a safety chain, it was guilty of independent negligence which operated as a proximate cause of the accident in question.

It was not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities in order to establish that their failure to provide the necessary safeguards constituted negligence. Their negligence is established if a reasonably prudent person would foresee that injury of the same general type would be likely to happen in the absence of such safeguards. (*Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 600 [5] [110 P.2d 1044].)

Therefore, the rule is applicable that where, as here, there is a primary liability on the part of a principal, and the principal owes a duty directly to the plaintiff, and the principal's liability does not depend on the doctrine of *respondeat superior,* a verdict in favor of an agent of the principal is not inconsistent with a verdict against the principal. (*Jensen* v. *Southern Pacific Co.,* 129 Cal.App.2d 67, 69 [1] et seq. [276 P.2d 703] ; *Howard* v. *Triangle Freight Lines,* 109 Cal.App.2d 620, 624 [1] [241 P.2d 35] ; *Barsoom* v. *City of Reedley,* 38 Cal.App.2d 413, 420 [7] [101 P.2d 743] ; *McCullough* v. *Langer,* 23 Cal.App.2d 510, 516 [2] [73 P.2d 649] ; Rest., Judgments (1942), § 99, Comment b, p. 494.)

Second. *Did the trial court err in permitting plaintiffs to introduce evidence on the question whether any member of the faculty of the college had asked Gearhart if he had a California driver's license and in instructing the jury as follows:* "You are instructed that a non-resident minor between the ages of 16 and 21 years who comes into the State of California may operate a motor vehicle for a period of ten days immediately following the entry of such non-resident minor into California without obtaining an operator's or chauffeur's license from the Department of Motor Vehicles of this state. During such period of ten days said non-resident minor may drive on California highways. If said non-resident minor desires to drive a motor vehicle on the public highways after a period of ten days immediately following the entry of such non-resident minor into California, he must apply for a license and be examined in the manner provided by law by the Department of Motor Vehicles of the State of California. *You are further instructed that it would not be an act of negligence on the part of said minor to drive motor vehicles on the public*

*highways of California after said ten-day period without a license.* (Italics added.)

"The Department of Motor Vehicles of the State of California has the duty to give an examination to all applicants for license to drive on California highways which examination includes a test of their ability to drive and a knowledge and understanding of the provisions of the vehicle code of the State of California governing the operation of vehicles on the highway."

*No.* Plaintiffs' attorney twice asked Gearhart while he was on the witness stand if he had a California driver's license at the time of the accident, but objections to such questions were sustained. Plaintiffs' attorney then asked Gearhart whether any member of the faculty of the college had asked him if he had a California driver's license, and the court ruled that such evidence was admissible. Subsequently, at plaintiffs' request, the jury was instructed as quoted above.

There is no question that possession of a driver's license is immaterial in determining whether Gearhart himself was negligent at the time and place of the accident. If an accident occurs, the determination of care or lack of care must be determined from the facts of the accident. (*Strandt* v. *Cannon,* 29 Cal.App.2d 509, 518 [85 P.2d 160].)

However, the evidence in question was introduced not for the purpose of showing negligence on Gearhart's part, but, rather, for the purpose of showing a general lack of supervision by the district over him in his use of the vehicle which caused the injury. Since the theory on which plaintiffs sued the district was that its failure to supervise Gearhart in such activity was a proximate cause of the accident, evidence of a general lack of supervision with respect thereto was admissible.

 Third. *Did the trial court err in instructing the jury that the care required of any person under the age of 21 years is not to be judged by the standard applicable to an adult, but by that degree of care which might reasonably have been expected of a child of like age, capacity and experience, under the same or similar circumstances?*[5]

---

[5]The instruction is substantially the same as No. 147, Book of Approved Jury Instructions (1956), and reads as follows: "A child is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience. There is no precise age at which, as a matter of law, a child comes to be held accountable for his or her actions by the same standard as applies to an adult. It is for you to

*No.* This instruction was directed to the conduct of Gear-hart, not the plaintiffs, for there was no claim of contributory negligence. The instruction correctly states the general rule. (*Cahill* v. *E.B. & A.L. Stone Co.,* 167 Cal. 126, 139 [138 P. 712].) ▮▮▮ A minor's age alone, though it be 18 years, does not as a matter of law establish maturity such as to impose upon him or her the standard of care applicable to an adult. (*Guyer* v. *Sterling Laundry Co.,* 171 Cal. 761, 763 et seq. [154 P. 1057]; *Satariano* v. *Sleight, supra,* 54 Cal.App.2d 278, 283 [7].)

▮▮▮ Fourth. *Did the trial court err in overruling the district's objection to certain motion pictures of plaintiff Lehmuth and the exhibition of the same to the jury?*

*No.* About four months after the accident, a moving picture was taken of plaintiff Lehmuth, which picture is described by the district as follows: "Despite the fact that oral testimony had been given concerning the condition of Virginia Lehmuth while in the hospital, the existence and use of a tracheotomy (insertion of a tube in a slit in the trachea, the 'windpipe'), the existence and use of a Levin tube for feeding (tube through nostril into stomach), her unconscious flailing of arms and body, flinching, and other similar matter . . . there was offered at the conclusion of plaintiffs' case in chief a motion picture film . . . taken of Virginia Lehmuth in the Seaside Hospital by Mr. Brugwin."

The picture corroborates the oral evidence of plaintiff Lehmuth's condition, and the trial judge, in the exercise of his discretion, held that it was not inflammatory. It was proper to receive the moving picture in evidence. (*People* v. *Cheary,* 48 Cal.2d 301, 312 [8] et seq. [309 P.2d 431]; *People* v. *Carter,* 48 Cal.2d 737, 751 [11] [312 P.2d 665].)

▮▮▮ Fifth. *Did the trial court err in failing to give the district's requested instruction concerning supervision and auditing of funds of the student body by the governing board of the district?*

*No.* The proposed instruction quotes section 16143 of the

determine the mental capacity and experience of all persons under the age of 21 years involved in this action, and whether his, her or their conduct was or was not such as might reasonably have been expected from a child or children of like age, capacity and experience, under the same or similar circumstances.

"The rule just stated applies even when a child is charged with having violated a statute or an ordinance, or the evidence shows such a violation. The question whether or not the child was negligent still must be answered by the standard applicable to children as I have stated it to you."

Education Code, which reads: "The governing board of any school district shall provide for the supervision and auditing of all funds raised by any student body or student organization using the name of the school," and section 16144, which provides: "The funds of any student body organization shall be deposited in a bank approved by the governing board of the school district and shall be expended subject to such procedure as may be established by the student body organization subject to the approval of any employee or official of the school district designated by the governing board."

The instruction would have informed the jurors that the duties thus imposed upon the district "are duties separate and apart from any other duties it may have . . . duties of a fiscal supervision as distinguished from duties which a district may have to supervise student activities and conduct." The proposed instruction concludes: "Accordingly, you are instructed that any evidence received in this case, tending to show supervision, auditing or other control of funds of the Associated Student Body is to be disregarded and is not to be used by you in determining the liability, if any, of the School District."

Considerable evidence had been taken upon this subject and the district had repeatedly objected, but there was no error in refusing the requested instruction. It would have required the jury to ignore part of the district's statutory duties of supervision of the student body. These sections, 16143 and 16144 of the Education Code, are but specialized directions complementing section 16142, *supra,* of the same code, the opening sentence of which is, "Any group of students may organize a student body association within the public schools with the approval and subject to the control and regulation of the governing board of the school district."

 Sixth. *Was it reversible error for the judgment to run in favor of Virginia Lehmuth's guardian rather than Virginia?*

*No.* The action was started in the name of Charles Lehmuth, Jr., as general guardian of the person and estate of Virginia. Later a written stipulation was made by all parties, including the district: "That, plaintiffs may substitute for and in the place of the plaintiff, Charles Lehmuth, Jr., guardian for the person and estate of Virginia Ann Lehmuth, a minor, the plaintiff Charles Lehmuth, Jr., guardian for the person and estate of Virginia Ann Lehmuth, an incompetent."

This was followed by an order of the court approving the substitution. Thereupon, a second amended complaint was

filed in the name of Charles Lehmuth, Jr., as general guardian of the person and estate of Virginia Ann Lehmuth, an incompetent. Answer thereto was filed by the district. It made no objection to the capacity of the guardian to maintain the action or to the style of the complaint.

The point was not raised below. Of course, the real party in interest is Virginia, not her guardian, and the title of the case should have been molded accordingly, but the district's objection does not go to the merits of the action. The rule is here applicable that the failure to properly entitle an action is waived and cannot be raised for the first time on appeal where no objection is made in the trial court and the case is tried on the theory that the pleadings are of such form and substance as to properly frame the issues actually tried. (*Westphal* v. *Arnoux,* 51 Cal.App. 532, 536 [3] [197 P. 395].)

The judgments are affirmed. The orders denying the motions for judgments notwithstanding the verdicts are affirmed.

Gibson, C. J., Traynor, J., Spence, J., Peters, J., and White, J., concurred.

SCHAUER, J.—I concur in the judgment and, in general, in the reasoning and conclusions stated in the opinion authored by Justice McComb.

It is my view, however, that minors who undertake to drive motor vehicles upon the public highways of this state should be subject to the same rules governing operation of such vehicles and to the same liability for breach of such rules, as are adults.