[No. B069091. Second Dist., Div. Seven. Nov. 23, 1993.]

BETTY JONES, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, only the following parts of this opinion are certified for publication: Introduction, part III and the Disposition.

## Counsel

James K. Hahn, City Attorney, Thomas C. Hokinson, Assistant City Attorney, and Renee J. Laurents, Deputy City Attorney, for Defendant and Appellant.

Freeburg, Judy, Macchiagodena & Nettels and Steven J. Freeburg for Plaintiff and Respondent.

## Opinion

**JOHNSON, J.**—This suit is the result of an automobile accident involving a truck owned by the City of Los Angeles (City). Liability for the accident was admitted by the City and the trial was limited to the issue of damages. A jury awarded the plaintiff $5.5 million in damages. On motion of the City the trial court conditionally granted a new trial in the event the plaintiff did not agree to a reduced award of $3.85 million. The plaintiff agreed to the remitted award and judgment was entered accordingly. The City appeals contending there is insufficient evidence of causation of the plaintiff's paraplegia to justify the remitted amount of damages, the trial court erred in failing to state reasons for reducing the award, an inflammatory "Day in the Life" videotape of the plaintiff prejudiced its case, and juror misconduct requires a new trial on the issue of damages. We reject these contentions of error and affirm the judgment.

### Facts and Proceedings Below*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Discussion

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *The Trial Court Did Not Abuse Its Discretion in Allowing the "Day in the Life" Videotape to Be Presented at Trial.*

Ms. Jones submitted a 20-minute long videotape of her daily activities at home since being confined to a wheelchair. This so-called "Day In The Life" videotape depicts Ms. Jones being moved from her bed by two attendants, being bathed, being placed in her wheelchair and shows her attempting to move around in the chair. On objection by the City, the trial judge and attorneys for both parties reviewed the videotape outside the presence of the jury. The City objected on the ground the videotape was hearsay because "it's making a statement that really can't be cross-examined."[3] The City also

---

*See footnote, *ante*, page 436.

[3]On appeal, the City abandoned this contention and thus we do not consider it. (See *Grimes v. Employers Mutual Liability Ins. Co.* (D. Alaska 1977) 73 F.R.D 607, 610-611 which disposed of a similar objection under the Federal Evidence Code.)

suggested the videotape was cumulative of oral testimony to be given by a nurse who was present during the entire filming of the videotape.[4]

In addition, the City argued the videotape was far more prejudicial than probative of any issue in the case. The City specifically objected to one segment of the videotape where the camera zooms in on Ms. Jones's face while she is in obvious discomfort and is grimacing. ■ ■ No objection was made on the ground of a lack of foundation or failure to authenticate the videotape, as the City conceded such an objection stood little chance of success.[5]

---

[4]The nurse, Ms. Roughan, is an independent case management specialist, brought in to assist Ms. Jones with her recovery. Ms. Roughan testified she is a registered nurse who owns a case management and medical/legal consulting business. Ms. Roughan was brought in to evaluate Ms. Jones and design a plan for her rehabilitation. Ms. Roughan was present during the filming of the videotape and was asked not to act differently than any other day in which she visited Ms. Jones. Similarly, Ms. Jones was also told to act naturally.

[5]The City, in its reply brief, points out there would have been little difficulty in laying a foundation for the videotape which explains why it did not make such an objection at trial. Appellant correctly notes the same foundation which applies to photographs also applies to films and videotapes. Since Ms. Roughan testified she was present during the filming of the videotape and testified she had been to the nursing home prior to the filming and was aware of Ms. Jones's daily routine, her testimony was sufficient to lay a foundation for, and to authenticate the videotape.

A videotape is equivalent to a writing under the Evidence Code. (*People* v. *Rich* (1988) 45 Cal.3d 1036, 1086, fn. 12 [248 Cal.Rptr. 510, 755 P.2d 960].) Evidence Code section 250 states a "writing" "means handwriting, typewriting, printing, photostating, photographing and every other means of recording upon any tangible thing any form of communication or representation, *including letters, words, pictures, sounds, or symbols, or combinations thereof.*"

For purposes of laying a foundation and to authenticate a film under the Evidence Code, the videotape should comply with all of the applicable requirements for admission of a writing under the code. Evidence Code section 1401 states: "(a) Authentication of a writing is *required before it may be received in evidence.*" Pursuant to Evidence Code section 1400, it is sufficient to authenticate a "Day In The Life" videotape if the proponent makes a showing the videotape is an accurate portrayal of what it purports to be. For example, in *People* v. *Bowley* (1963) 59 Cal.2d 855, 859 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178], the court held a film reconstructing the events of a crime was properly authenticated by one of the participants of the crime. In so holding the court noted "[i]t is well settled that the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is legally sufficient foundation for its admission into evidence."

Similarly in *Cisarik* v. *Palos Community Hospital* (1991) 144 Ill.2d 339 [579 N.E.2d 873, 874], counsel for appellant planned to show a motion picture of a typical day in the life of an infant who had brain damage. The court in *Cisarik* held ". . . before a 'Day in The Life' film can become evidence at trial it must first pass a two-prong test. First, a foundation must be laid, by someone having personal knowledge of the filmed object, that the film is an accurate portrayal of what it purports to show. [Citation.] Second, the film is only admissible if its probative value is not substantially out-weighed by the danger of unfair prejudice. [Citations.]" (*Cisarik* v. *Palos Community Hospital, supra*, 579 N.E.2d at p. 874.)

This approach is adopted by a noted expert on evidence. "Motion pictures, when they were first sought to be introduced in evidence, were frequently objected to and sometimes excluded

In this case the trial court found the videotape to be "relevant and material" on the issue of Ms. Jones's current medical treatment and probative of the difficulties she now faces in her daily life. The court concluded its ruling by stating "[un]der 352 of the Evidence Code, the court does not find that the prejudicial effect outweighs the probative value.[6] The court will allow the tape in its entirety to be seen by the jury and as narrated by Ms. Roughan," the nurse present during the filming.

On appeal, the City alleges the trial court abused its discretion pursuant to Evidence Code section 352 by admitting the "Day in The Life" videotape over its objection. The City argues the videotape had little or no relevance and its only purpose was to elicit juror sympathy. The City also contends the prejudicial impact of the videotape far outweighed any probative value it may contain. Finally, the City argues the videotape was cumulative of oral testimony which was supplied by Ms. Roughan because she narrated the film while on the witness stand. We find these arguments unpersuasive and conclude the trial court did not abuse its discretion by overruling the City's objections and admitting the videotape into evidence.

■ The City first contends the videotape was highly prejudicial and lacked any relevance other than to elicit juror sympathy for the victim. The City argues the videotape was irrelevant because it demonstrated the difficulties paraplegia had caused Ms. Jones yet there was insufficient evidence the accident caused the paraplegia. Therefore, the City contends because the City was not responsible for those injuries, the images of Ms. Jones's difficulties due to the paraplegia had no probative value on the issues at trial. In an unpublished portion of the opinion we found substantial evidence supported the jury's conclusion the accident in fact caused Ms. Jones's paraplegia. Consequently the City's argument lacks merit.

---

on the theory that they afforded manifold opportunities for fabrication and distortion. Even those older decisions which upheld the admission of motion pictures appear to have done so on the basis of elaborate foundation testimony detailing the methods of taking, processing, and projecting the film. More recently, however, it appears to have become generally recognized that, as with the still photograph, the reliability and accuracy of the motion picture need not necessarily rest upon the validity of the process used in its creation, but rather may be established by testimony that the motion picture accurately reproduces phenomena actually perceived by the witness. Under this theory, though the requisite foundation may, and usually will, be laid by the photographer, it may also be provided by any witness who perceived the events filmed. Of course, if the foundation testimony reveals the film to be distorted in some material particular, exclusion is the proper result." (McCormick on Evidence (3d ed. 1984) § 214, pp. 673-674, fns. omitted; see also 2 Witkin, Cal. Evidence (3d ed. 1986) § 843, pp. 809-810.)

[6]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, or of confusing the issues, or of misleading the jury."

The trial court specifically found the videotape to be relevant and material to Ms. Jones's medical treatment and to an understanding of her daily life. We agree with the trial court's conclusion. The videotape was relevant on the issue of damages. The videotape was highly probative of the extent of Ms. Jones's injuries and graphically demonstrated her need for constant medical attention in a manner oral testimony could not convey. It also had substantial probative value on the extent of Ms. Jones's pain and suffering and was therefore helpful to the jury in calculating appropriate damages.[7]

■ Although California's appellate courts have not yet ruled on the specific issue of the admissibility of "Day in The Life" videotapes, the decisions in *Lehmuth* and *Rodriguez* are instructive. Those opinions recognize photographic material, including films, can uniquely demonstrate the nature and extent of an accident victim's injuries.

In *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626 [151 Cal.Rptr. 399], the defendant objected to the introduction of certain photographs of a victim who was struck by a 630-pound piece of pipe while on the job. The plaintiff attempted to admit photographs which showed the extent of his injuries including scars, pressure sores, an opening in his stomach and his useless legs. (*Id.*, at p. 663.) The defendant objected on the ground the photos were gruesome depictions of the plaintiff's injuries. The defendant asserted the potential prejudice which would result from allowing the jurors to view such photos outweighed any probative value they may have. The court found the photographs to be relevant to show the extent of the victim's injuries. The court reasoned the photos should be admitted because they were necessary for the jury to be able to make a fair assessment of adequate compensation. Therefore, the court found the probative value of the photographs outweighed any prejudicial effect. (*Ibid.*)

---

[7]Testimonial use of motion pictures has occurred primarily in personal injury litigation. As noted by one practitioner: "The medico-legal uses of motion pictures are as broad and varied as the combined imagination of the lawyer and his photographer. The following list of suggested applications includes universally accepted as well as undecided but solidly grounded uses.

"(1) To prove malingering. . . .

"(2) To illustrate condition before injury. . . .

"(3) To illustrate condition after injury. Where the plaintiff's condition can be expected to improve materially before trial, or where certain infirm behavior is unlikely to be repeated by the plaintiff in the courtroom, it is often wise to record the present post-injury condition of the plaintiff on film in order to prove the extent of injury. [¶] The plaintiff's present condition can also be effectively shown through motion pictures in these cases in which the plaintiff is too ill to appear in court. . . .

"(4) To illustrate pain and suffering. While pain, as such cannot be photographed, the plaintiff can be photographed undergoing treatment or behaving in such a way that the jury can reasonably infer that the patient is suffering. Of course, many films will be relevant to both conditions after injury and pain and suffering at the same time. . . ." (Paradis, *The Celluloid Witness* (1965) 37 U.Colo.L.Rev. 235, 263-265; see also 3 Wigmore, Evidence (Chadbourn rev. 1970) § 798(a), p. 260.)

In so holding, the court concluded that only where the photographs have little probative value, are cumulative of other testimony and are calculated to inflame the jury, can an appellate court conclude the discretion conferred upon the trial court pursuant to Evidence Code section 352 should be exercised in favor of exclusion. (87 Cal.App.3d at p. 663, relying on *People v. Gibson* (1976) 56 Cal.App.3d 119, 134 [128 Cal.Rptr. 302].)

The same considerations expressed by the court in *Rodriguez* apply equally to the question of the admissibility of "Day in The Life" videotapes.

Similarly, in *Lehmuth v. Long Beach Unified Sch. Dist.* (1960) 53 Cal.2d 544, 555 [2 Cal.Rptr. 279, 348 P.2d 887], the plaintiff attempted to admit a film which was taken of her in the hospital after being severely injured as a result of the defendant's negligence. The film showed " 'the existence and use of a tracheotomy (insertion of a tube in a slit in the trachea, the "windpipe"), the existence and use of a Levin tube for feeding (tube through nostril into stomach), her unconscious flailing of arms and body, flinching and other similar matter.' " On these facts, the court nevertheless held the film was not inflammatory and the trial judge was correct to admit the film. (*Ibid.*)

Courts of other jurisdictions have dealt with the issue of the prejudicial nature of "Day in The Life" videotapes and have frequently admitted them into evidence. In *Grimes v. Employers Mutual Liability Ins. Co., supra,* 73 F.R.D. 607, the plaintiff was injured in an industrial accident. The plaintiff attempted to admit a film depicting him performing several daily activities and conducting clinical tests. The film also contained scenes of the plaintiff at home with his daughter and quadriplegic brother. The defendant objected on the ground the tape was irrelevant, unduly prejudicial, cumulative and hearsay. The court held: "The scenes of the plaintiff with his daughter and with his quadriplegic brother serve little purpose other than to create sympathy for the plaintiff. The prejudicial effect of these scenes outweighs the probative value of the evidence. In contrast, the other scenes of the plaintiff performing daily functions and the film of the plaintiff performing clinical tests have a probative value greater than any prejudice which might result. The films illustrate better than words, the impact the injury had on the plaintiff's life in terms of pain and suffering and loss of enjoyment of life." (73 F.R.D. at p. 610.)

*Bannister v. Town of Noble, Okl.* (10th Cir. 1987) 812 F.2d 1265 also concerned the admissibility of a "Day in The Life" videotape. In *Bannister,* the plaintiff suffered severe injuries in an automobile accident and was rendered a paraplegic. Bannister introduced a "Day In The Life" videotape

to show his adaptation to his injury and the effect of the paraplegia on his ability to perform ordinary tasks. In its analysis concerning the admissibility of the videotape, the court outlined a number of issues a trial judge should consider prior to admitting such a film.

According to the *Bannister* court, the trial court must determine whether the probative value of a "Day in The Life" film outweighs the possibility of prejudice by determining whether the videotape fairly represents the facts with respect to the impact of injuries on the plaintiff's daily activities. (812 F.2d at p. 1270.) The trial court should examine whether the videotape, consciously taped for purposes of litigation, demonstrates self-serving behavior or exaggerated difficulty in performing ordinary tasks or depicts conduct that serves little purpose other than to create sympathy for the plaintiff. The trial court should also be aware of the dominating nature of a film, as ". . . the concern is the jury will better remember and thus give greater weight to, evidence presented in a film as opposed to more conventionally elicited testimony." Significantly, the court concluded "[t]he possibility that a film will be prejudicial is significantly reduced when the subject of that film can be cross-examined at trial." (812 F. 2d at pp. 1269-1270.) In the final analysis the *Bannister* court found ". . . the prejudicial effect of a videotape is to be decided on a case by case basis" and the trial judge should view the film outside the presence of the jury in order to make its determination. (*Id.*, at p. 1270.)

The trial judge in *Bannister* had examined the film before deciding to allow the jurors to view it and concluded it accurately portrayed the daily routine of the plaintiff, was not unduly prejudicial and allowed admission of the film into evidence. While the Court of Appeals found the film contained a few scenes of the plaintiff engaged in activities he was unlikely to do frequently, the court found the film as a whole depicted plaintiff's adaptation to his injury and affirmed the trial court's ruling. (812 F.2d at p. 1270.)

Professor McCormick also emphasizes the importance of judicial discretion in deciding whether to admit motion picture or videotape evidence. He states, "Judicial discretion in the admission . . . of motion pictures is constantly emphasized in the decisions, and is perhaps largely attributable to the fact that the presentation of this kind of evidence will involve considerable time and inconvenience." (McCormick on Evidence, *supra*, § 214, p. 674, fn. omitted.) He goes on to state, "Somewhat more difficult questions are posed by moving pictures taken of an injured party pursuing ordinary day-to-day activities, offered for the purpose of bringing home to the trier of fact the implications and significance of the injury for which damages are sought. With respect to both their relevance and to the possible objections

which may legitimately be raised against them, these films are closely akin to bodily demonstrations of injuries in court. Both species of evidence therefore ought to be governed by the same rule, to wit, both should be admissible only in the sound discretion, and under the strict control, of the trial court." (*Ibid.*, fn. omitted.)

We now turn to the facts of this case. The trial court, in the presence of the attorneys for both parties, independently reviewed the 20-minute film depicting Ms. Jones's common daily activities. The film depicted her getting out of bed and into her wheelchair, bathing, and moving about in the chair. These are ordinary day-to-day tasks, and there is no evidence or allegation the tape depicted exaggerated difficulty in performing those tasks. Similarly, there is no evidence of any self-serving behavior on the part of Ms. Jones. The expression of pain on her face was likely the result of the difficulties she was experiencing at the time and in any event comprised but a small fraction of the 20-minute film.

The videotape in the case at bar was relevant on the issue of the extent of Ms. Jones's medical needs and the extent of her pain and suffering. The videotape was also probative to aid the jurors in determining the quantum of compensation required based on the extent of her needs. Moreover, because there was an opportunity to cross-examine both Ms. Jones and Ms. Roughan at trial, the risk of any prejudice was greatly reduced. In weighing all of these considerations, we find the trial court did not abuse its discretion by concluding the probative value of the videotape of Ms. Jones's daily activities outweighed any prejudicial effect.

The City also contends the trial court abused its discretion in admitting the videotape because it was cumulative of Ms. Roughan's oral testimony in narrating the film. A similar objection was made to the introduction of the film in *Lehmuth* v. *Long Beach Unified Sch. Dist., supra*, 53 Cal.2d 544, 555. In *Lehmuth*, the court appeared to reject the argument a film was cumulative because it merely depicted the same activities testified to by a doctor who had treated the plaintiff. The court held ". . . the picture corroborates the oral evidence of plaintiff Lehmuth's condition and the trial judge, in the exercise of his discretion, held that it was not inflammatory. It was proper to receive the motion picture into evidence." (53 Cal.2d at p. 555.)

The court in *Grimes* v. *Employer Mutual Liability Ins. Co., supra*, 73 F.R.D. 607, 610 also rejected the defendant's contention the "Day In The Life" film was cumulative of other testimony. The court held, "Generally, photographic evidence is only cumulative of other photographic evidence of

the same kind. In the instant case, the film of plaintiff performing daily functions is not cumulative because the film is the best evidence of the plaintiff's pain and suffering and loss of enjoyment of life."

In the case at bar, we discern no abuse of discretion in the trial court's ruling finding the videotape not cumulative to other testimony. The videotape best describes the problems Ms. Jones encounters on a daily basis in a way mere oral testimony may not convey to the jurors. The videotape also best demonstrates the everyday problems a person with paraplegia encounters as a result of an injury of this kind. Moreover, the videotape is the most effective way to explain to the jury the extent of the assistance and medical attention required as a result of being rendered a paraplegic.

In sum, we find the trial court did not abuse its discretion in concluding the videotape was not cumulative to other evidence and in admitting the film.

IV. *There Was No Juror Misconduct Requiring a Recalculation of Damages.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Respondent to recover her costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

*See footnote, *ante,* page 436.