Thomas I. GRIMES, Plaintiff,

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Defendant and Third-Party Plaintiff,

v.

H. C. MASON ASSOCIATES, INC., Defendant and Third-Party Defendant.

No. A–193–72 Civil.

United States District Court,
D. Alaska.

Jan. 24, 1977.

Douglas J. Serdahely, Libbey & Serdahely, Anchorage, Alaska, for plaintiff.

Theodore M. Pease, Jr., Burr, Pease & Kurtz, Inc., Anchorage, Alaska, for defendant employers.

Max N. Peabody, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, Alaska, for defendant Mason.

## ORDER RE MOTION IN LIMINE

PLUMMER, Senior District Judge.

This cause of action in diversity is a suit for personal injuries arising out of an industrial accident. On August 18, 1976, the plaintiff Thomas I. Grimes filed a motion in limine seeking a pretrial ruling on the admissibility of certain motion pictures. Specifically, the plaintiff seeks a ruling on the

admissibility of: 1) a film depicting the plaintiff performing various daily activities and conducting clinical tests (hereinafter referred to collectively as "plaintiff's film") and 2) two television commercials, "Wausau Men" and "Physical Exam," which advertise safety services allegedly provided by defendant Employers Mutual Liability Insurance Company of Wisconsin (hereinafter "Employers").

In its motion in opposition, defendant Employers objected to the admission of plaintiff's film as: 1) irrelevant, 2) prejudicial to the defendant, 3) selective and cumulative, and 4) hearsay. Defendant Employers also objected to the introduction of the two television commercials as: 1) irrelevant, 2) prejudicial to the defendant, and 3) hearsay. Defendant H. C. Mason and Associates, Inc. did not file an objection to the plaintiff's motion.

## 1. Plaintiff's Film

The plaintiff's film is a 25 minute, 16 mm soundless motion picture consisting of three segments: 1) a section depicting the plaintiff performing daily activities in and near his home, 2) a section depicting the plaintiff performing the Jebsen-Taylor Hand Function Test, and 3) a section depicting the plaintiff performing a range-of-motion, prosthetic device test.

### a. Verification and Relevance

■ Motion pictures are generally admissible if authenticated and if relevant to the issues of the case. A. Scott, Photographic Evidence § 1291, at 142 (2d ed. 1969); 8 Am.Jur. Proof of Facts p. 153 (1960); Annot., 62 A.L.R.2d 686, 688 (1958); See e. g. *Feather River Lumber Co. v. United States*, 30 F.2d 642 (9th Cir. 1929); *Miles Laboratories, Inc. v. Frolich*, 195 F.Supp. 256 (S.D. Cal.1961), aff'd, 296 F.2d 740 (9th Cir. 1961), cert. denied, 369 U.S. 865, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962).

■ Verification involves the identification of the persons, objects or places pictured, proof that the film is a true and accurate representation, and evidence as to the circumstances of taking, developing, and projection. Such verification can be provided by the testimony of the photographer or any person having sufficient knowledge. A. Scott, Photographic Evidence § 1297, at 154 (2d ed. 1969); Annot., 9 A.L.R.2d 899, 921 (1950). The plaintiff claims that the deposition taken from Mr. Robert Stern on July 9, 1976, is sufficient verification of the plaintiff's film. The deposition does establish that Mr. Stern is a professional photographer, that he used a camera in good mechanical condition, that the material filmed was not rehearsed, that no special cameral effects were used, that the film was not edited, and that the film accurately portrays what he personally observed while making the film. If these facts are established at trial by direct testimony or deposition testimony, the plaintiff will have provided sufficient verification.

■ Rule 401 of the Federal Rules of Evidence defines relevant evidence as:

". . . evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

See generally 1 Weinstein ¶ 401, at 401–1 (1975). Both the film of the plaintiff engaging in daily activities and the film of the plaintiff performing clinical tests are relevant to the issue of the nature and extent of damages. The defendant's relevancy objection is frivolous.

### b. Prejudice to the Defendant

■ The defendant's relevancy objection is in fact an objection to the prejudicial nature of the plaintiff's film. Under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded in the court's discretion:

". . . if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

See generally 1 Weinstein ¶ 403, at 403–1 (1975). The defendant contends that the film of the plaintiff at home is prejudicial and misleading because the activities filmed were not activities normally performed by the plaintiff and because the filming was selective and non-continuous. The defendant in particular objects to the scenes of the plaintiff hugging his daughter, placing a cigarette in the mouth of his quadriplegic brother, driving a car, loading a gun while not actually hunting, and operating a fishing reel while not actually fishing. The defendant similarly objects to the film of the plaintiff performing clinical tests because the filming was prejudicial.

The defendant's objections are in part well taken. The scenes of the plaintiff with his daughter and with his quadriplegic brother serve little purpose other than to create sympathy for the plaintiff. The prejudicial effect of these scenes outweighs the probative value of the evidence. In contrast, the other scenes of the plaintiff performing daily functions and the film of the plaintiff performing clinical tests have a probative value greater than any prejudice which might result. The films illustrate, better than words, the impact the injury has had on the plaintiff's life in terms of pain and suffering and loss of enjoyment of life. While the scenes are unpleasant, so is plaintiff's injury. Given that liability will have to be established before the jury will be allowed to view the film, the admission of the film will not be unduly prejudicial if the plaintiff shows that the daily activities were or are typical activities for the plaintiff.[1]

#### c. Selective and Cumulative

■ The fact that the filming was selective may be the basis for exclusion if the court feels that the discontinuity destroys the probative value of the film. 5 Weinstein ¶ 1001(2)[03], at 1001–30 (1975); A. Scott, Photographic Evidence § 1297, at 157 (2d ed. 1969). In the case at bar, the lack of continuity does not destroy the value of the film as a demonstration of the impact of the injury on plaintiff's life.

■ The defendant has in addition objected to the introduction of the plaintiff's film as cumulative evidence. Rule 403 of the Federal Rules of Evidence gives the court discretion to exclude a film if the film is not necessary to prove or disprove a material fact. Generally, photographic evidence is only cumulative of other photographic evidence of the same kind. A. Scott, Photographic Evidence § 1022, at 332 (2d ed. 1969). In the instant case there is no other photographic evidence of the same kind being offered. In any case, the film of plaintiff performing daily functions is not cumulative because the film is the best evidence of the plaintiff's pain and suffering and loss of enjoyment of life. Similarly the film of plaintiff performing clinical tests is not cumulative even if medical testimony is introduced detailing the nature and extent of the injury. The clinical film will add to the medical testimony by visually demonstrating the extent and impact of the injury. Cf. *Pursche v. Atlas Scraper and Engineering Co.*, 300 F.2d 467 (9th Cir. 1962); *Luther v. Maple*, 250 F.2d 916 (8th Cir. 1958).

#### d. Hearsay

■ The defendant contends that the proposed movie is a statement for hearsay purposes because it is assertive conduct intended to communicate the nature and extent of plaintiff's injury. While there is little direct authority on the hearsay question, the general conclusion is that motion pictures are not hearsay and are admissible if subject to cross-examination through the witness who verifies and uses the film. Paradis, The Celluloid Witness, 37 U.Colo. L.R. 235, at 262, 264 (1965); Annot., 62 A.L.R.2d 686, 689 (1958); See e. g. *Richardson v. Missouri-K.-T. R. Co. of Texas*, 205 S.W.2d 819, 823 (Tex.Civ.App.1947). The explanation given for this conclusion is that

---

1. The showing should be made prior to trial in order to allow time to edit the sequence in the event of a failure of proof.

the verifying witness is merely using the film as a means of communicating his observations. Even if the film has been projected prior to trial, the film is no more hearsay than the testimony of a witness who has talked about the observed events prior to trial. While this explanation is sufficient for situations where the witness observed unstaged events or activities of the plaintiff, a film offered by the plaintiff showing the plaintiff performing tasks to exhibit his disability is like a witness testifying about assertive conduct. A witness's testimony about observed assertive conduct when used to prove the truth of the assertion would be hearsay, and similarly a film showing assertive conduct would be hearsay.[2]

However, even though the plaintiff's film is hearsay, the evidence is admissible in this instance under Rule 803(24) of the Federal Rules of Evidence. See generally 4 Weinstein ¶ 803(24)[01], at 803–241 (1975). Use of this exception to admit the film in evidence allows the jury to consider evidence which is more probative on the material issues of pain and suffering and loss of enjoyment of life than any other evidence which the plaintiff could procure through reasonable efforts. Guarantees of trustworthiness are provided by having the plaintiff-actor and the verifying witness subject to cross-examination. Moreover, the plaintiff has revealed his intention to offer the film sufficiently in advance of trial, and thus the defendant cannot claim surprise. Use of this exception is justified in this situation where the normal hearsay problems do not exist or can be remedied. There are no problems with perception, memory, or meaning, and any sincerity

problems can be solved by having the verifying witness and the plaintiff-actor subject to cross-examination.

### 2. Television Commercials

The question of the admissibility of the defendant's national magazine advertisements is not presently before the court.[3] The issue before the court is the admissibility of the two television commercials, "Wausau Men" and "Physical Exam."[4]

#### a. Relevance

■ The television commercials would not be relevant if the plaintiff were offering the films to prove that the films themselves constituted an undertaking[5] by the defendant to Kenai Lumber Co. to provide safety services, absent proof that Kenai Lumber Co. management or employees had viewed the commercials. The assertion by the defendant that the films were not shown in Alaska would indicate that no such showing of viewing could be made by the plaintiff.

#### b. Prejudice to the Defendant and Hearsay

■ The television advertisements are likewise admissible under Rule 403 of the Federal Rules of Evidence. The commercials are highly probative and there is little probability of undue confusion or prejudice. Furthermore, while the commercials would normally be hearsay for the reasons stated before, the commercials are not hearsay because they are admissions of a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence.

---

**2.** Compare *Lehmuth v. Long Beach Unified School Dist.*, 53 Cal.2d 544, 2 Cal.Rptr. 279, 348 P.2d 887 (1960), where films were taken of an unconscious plaintiff to show pain and suffering. The observations in that situation involved observations of nonassertive conduct which would not be hearsay under Rule 801(a) of the Federal Rules of Evidence.

**3.** The January 29, 1976 order did not hold that the magazine advertisements would be admissible at trial, only that the advertisements were discoverable. The parties should file a motion

in limine for a pretrial determination of the admissibility of defendant's national magazine advertisements. The parties should provide the court with copies of the advertisements.

**4.** The defendant's objection that a pretrial determination should be delayed until all pretrial memorandum are filed with the court is no longer appropriate. Both parties have filed their pretrial memorandums.

**5.** Restatement (Second) of Torts § 324A (1965).

Accordingly, it is hereby ORDERED as follows:

1. Subject to verification and cross-examination of the plaintiff and a showing that the activities are typical, the film of the plaintiff performing daily activities is admissible, except for the portion involving plaintiff's daughter and quadriplegic brother;

2. Subject to verification and cross-examination of the plaintiff, the film of the plaintiff engaging in clinical tests is admissible;  and

3. The television commercial, "Physical Exam," is admissible.