**Robert Allen THOMAS, Plaintiff,**

v.

**C. G. TATE CONSTRUCTION COMPANY, INC., Defendant.**

**Civ. A. No. 78–1930.**

United States District Court,
D. South Carolina,
Spartanburg Division.

Feb. 9, 1979.

---

L. Paul Barnes, Ward, Howell, Barnes, Long, Hudgens & Adams, David E. Turnipseed, Swofford, Turnipseed, Allen, Smith & Spears, Spartanburg, S. C., for plaintiff.

James H. Watson, Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Defendant's motion in limine seeking this court's Order prohibiting plaintiff from offering in evidence an audio-video tape. The tape portrays plaintiff, his wife and hospital personnel, and records their conversations and other utterances during the course of a physical therapy treatment administered to plaintiff in connection with burns which he received in the automobile accident out of which this lawsuit arose. The motion also requests the prohibition of the introduction of nineteen color photographs taken of the plaintiff during the early stages of his recovery which depict his injuries.

In the alternative, defendant moves for an Order requiring the audio-video tape to be edited so as to delete therefrom all audio portions and all video portions that demonstrate outward manifestations of pain experienced by the plaintiff.

These motions came on for argument before the court on Monday, January 30, 1979. After hearing preliminary remarks of counsel, the court and other personnel, consisting of the Deputy Clerk, the Court Reporter and the law clerk to the court, viewed the tape in question in the presence of counsel for the respective parties. After viewing, additional arguments of counsel were heard.

Defense counsel conceded that the tape was a true representation of the physical therapy session, agrees that the tape was made by a qualified photographer, that the equipment used in preparing the tape was in proper mechanical condition, that no special camera effects were used, that the tape was not edited and that the scenes depicted were not rehearsed. Defense counsel further concedes for the purposes of this motion that the physical therapy session which was recorded was representative of the several physical therapy sessions which plaintiff underwent during the course of his treatment, but has reserved its rights to raise this issue in the event the tape is held admissible.

The accident which produced the plaintiff's injuries occurred on April 6, 1978.

The tape was made May 15, 1978 and lasts approximately twenty-seven minutes.[1]

. The tape begins with a panoramic view of the physical therapy room and then shows plaintiff entering the room wearing bathing trunks, with both arms held in an outright position. The left hand and arm were bandaged from hand to elbow, the right from hand almost to elbow. The physical therapist begins removing the bandages by cutting them from the plaintiff's arms with a pair of scissors. After removing the bandages, the therapist appears to wipe, with gauze or a similar substance, what appears to be white grease or ointment, after which she appeared to be wiping away dead or burned skin. During the entire removal procedure, visual expressions and contortions of pain are depicted, plaintiff emits a plethora of continual groans or moans. Plaintiff then steps into a large tub filled with what appears to be a soapy solution with arms still in an outstretched, horizontal position, then sits down in the tub and immerses his arms. This action is accompanied by facial grimaces. A whirlpool device is then activated and the plaintiff is in the pool for a period of several minutes. During this process, the physical therapist is shown as washing or rubbing the burned areas on the plaintiff's arms and back. On at least one occasion a strip of what appears to be dead skin is shown being removed from the plaintiff's arm. Plaintiff is required by the physical therapist to lift his left arm which shows extensive burns and as she cleans this arm, plaintiff is shown to be experiencing extreme pain. Throughout, plaintiff continues to emit groans which amount almost to screams and it appears as if he may faint. At approximately this point in the session, plaintiff's wife appears in the film and attempts to soothe the plaintiff by putting her arms around him, patting him on the face and head, and in the area of his right breast. The therapist completes her cleaning of the arms, following which the plaintiff re-immerses his arms in the tub, again with obvious discomfort. After the plaintiff has spent several minutes in the tub with his arms submerged, the whirlpool device is deactivated. It appears that the plaintiff delays getting out of the tub until he can regain his composure or catch his breath. After leaving the tub, he resumes a seat on a stool and the therapist applies what appears to be large paper towels in an apparent effort to dry plaintiff's arms. Plaintiff appears exhausted. He is breathing extremely heavily and his head is held down, his eyes closed and his arms extended. His wife continues to soothe him. During the process of drying the arms with the paper towel, obvious expressions of pain, both visual and audible, are depicted. At one time the paper towel appears to be sticking to parts of the burned area and when the therapist began to remove the towel, obvious expressions of pain, both visual and audible, are again depicted. At this point the therapist inquires of the plaintiff if he is "o. k." and asks him to let her know if he gets to feeling sick. After the drying process has been completed, she begins to apply some type salve or ointment and again the plaintiff begins to evidence pain, both visual and audible. He makes a comment to the effect that "it seems to hurt worse every time". During this process, the therapist tells him that she cannot "guarantee that it will not hurt" and during the subsequent rebandaging process the plaintiff inquires if the bandages are going to "stick" and she replies that "it won't stick as bad". The tape ends when the rebandaging has been completed. Plaintiff appears obviously relieved that the physical therapy session has been concluded. During the entire process plaintiff was grunting, groaning and crying out and his face forming various contortions and grimaces evidencing much pain.

It is impossible in the foregoing brief summary to completely depict what is revealed by the audio and visual presentation of this tape. The tape positively shows that

1. After the motion was heard the court dictated into a machine the court's recollection of the scenes viewed.

plaintiff is experiencing extreme pain and mental anguish. During the viewing of this tape, one has a tendency to try to disregard it and to direct his attention to something more pleasant, and if one has the slightest tendency to be squeamish, a feeling of nausea arises.

The tape definitely incites extreme sympathy for the plaintiff and would inflame the average person.

There exists considerable legal precedent concerning the general question of whether motion pictures, photographs or video tapes are properly admissible as evidence. Generally speaking, there is no question but that, when properly authenticated and relevant, such materials are admissible. The general rule on demonstrative evidence of this nature may be stated:

> Demonstrative or inspection evidence may be excluded when, in the opinion of the court, the evidence would be likely to mislead, or confuse, the jury, produce undue prejudice.

> . . . . .

> While the admission of * * * demonstrative evidence is not improper merely because it is gruesome (14 A.L. R.3d 860), or because it may tend to influence the emotions * * * it should not be admitted merely for dramatic effect, or to arouse feeling, as by unduly exciting antipathy or sympathy. 32 C.J.S. Evidence § 602, p. 758.

Stopping here, there is little question but that the tape in question would be admissible.

Further, under the definition set forth in Rule 401, there is little question but that the tape does have evidentiary value. Indeed, the defendant's objection is not directed toward the general admissibility of the tape, but rather is directed toward the discretion which this court is required to

exercise pursuant to Rule 403 of the Federal Rules of Evidence.[2]

Research reveals that there is no prior decision that could be said to be controlling. The case of *Grimes v. Employers Mutual*, 73 F.R.D. 607 (D.C.1977), is perhaps most closely akin to the factual circumstances presently before the court. In that case, the District Court of Alaska permitted an edited version of a motion picture depicting the injured plaintiff performing various daily activities and conducting clinical tests. The reported decision does not graphically describe what the film there depicts and hence it is difficult to gather a clear impression of how prejudicial or inflammatory the film was or how much sympathy may have been generated by it. It is significant to note that in the *Grimes* case the court pointed out that liability was to be established before the jury had been allowed to view the film and hence the admission of the film could not prejudice the defendant on the question of liability. The case projects the common sense rule that motion pictures are generally admissible if authenticated and if relevant to the issues of the case [p. 609 of opinion, with supporting citations], and recites the balance test of Rule 403. It does not appear the motion picture in *Grimes* was attacked as inflammatory. This court is of the opinion that the *Grimes* court would not have reached the same conclusion if liability was yet an issue in the case.

The Advisory Committee's[3] Note on Rule 403 states:

> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for

---

**2.** *Rule 403.* "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**3.** Advisory Committee on provisions of the Federal Rules of Civil Procedure, The Judicial Conference of the United States.

balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, *Relevancy Unraveled*, 5 Kan.L.Rev. 1, 12–15 (1956).

A resort to Weinstein [4] reveals that as originally drafted the exclusion of relevant evidence on the grounds of prejudice, confusion or waste of time was stated in mandatory terms. It was later changed to "discretionary". We find in Weinstein the following:

Rule 403 recognizes that "relevancy is not always enough. There may remain the question, is its value worth what it costs?" [5] Will the search for truth be helped or hindered by the interjection of distracting, confusing or emotionally charged evidence? In making this determination, the court must assess the probative value of the proffered item as well as the harmful consequences specified in Rule 403 that might flow from its admission. The countervailing factors to admissibility specified in the Rule—prejudice, confusion of issues, danger of misleading the jury, and consideration of delay, waste of time or needless presentation of cumulative evidence—all find ample support in the authorities.

Of some help to this discussion is the case of *Foster v. Crawford Shipping Company*, 496 F.2d 788 (3rd Cir. 1974). There, plaintiff introduced a video tape showing the plaintiff during the course of an interview with his attorney. The exposure showed plaintiff in an apparently uncommunicative and partially catatonic state, "responding to his attorney's questions with grunts and growls." Plaintiff had been declared incompetent prior to trial because of insanity and, during the course of trial, his guardian had attempted to connect his insanity to an accident allegedly caused by the negligence of the defendant. A jury verdict was reversed and a new trial granted primarily on

the conclusion that the video tape had been improperly admitted into evidence. Plaintiff's contention was that the tape was admissible to show the condition of the plaintiff in order to support an award of pain and suffering and in support of the prayer for damages for permanent disability. In response to this the appellate court said:

. . . But even if its use had been so restricted, any benefit which might have been derived in the fact-finding process by such an illustration was far outweighed by the prejudice of admitting what amounted to ex parte testimony from the absent incompetent. The ruling admitting the video tape was error.

As shown by the foregoing, neither of the decisions referred to is of great assistance to this court, which must exercise its discretion. The tape in question depicts less than one-half hour of the plaintiff's recuperation period which required several months.

The Sixth Circuit, in *Jenkins v. Associated Transport, Inc.*, 330 F.2d 706, 711 (1964) allowed two colored photographs of plaintiff showing his injuries while he was in the hospital, but introduced into the opinion the words of caution as follows:

We would not condone, nor should a trial judge, the use of lurid photographs, paraphernalia, or other trappings of showmanship to enhance the plaintiff's verdict.

Perhaps the real decision in this case turns on the fact that this is a jury case. If it were before the court, for a bench trial, a different result might be obtained. Each case must be judged on its own climate, and on its own facts, and the setting of the particular case. In a well rendered opinion,[6] the appellate court considered an exception to the fact that the trial court allowed the burning of a fabric in the court and before the judge; the case was a case

---

**4.** Weinstein's Evidence (Commentary on Rules of Evidence for the United States Courts and Magistrates by Jack B. Weinstein and Margaret A. Berger). Volume 1, pp. 403–2, et seq., § 403(01).

**5.** Citing McCormick, *Evidence* § 152 at 319 (1954).

**6.** *Raymond v. Riegal Textile Corp.*, 484 F.2d 1025, 1026 (1st Cir. 1973, fn. 8).

in which a child's guardian was suing under a products liability theory for a flammable condition in the child's pajamas which caused it to catch fire quickly, and burn quickly, injuring the child. The footnote quoted:

The trial judge has discretion in admitting evidence, and while we might have found it error to permit the demonstration before a jury, we find no fault with the court's ruling.

During the course of the trial, the presentation of the tape may consume an appreciably greater proportion of the anticipated trial time. The novelty of using a video tape[7] in the courtroom in and of itself may make the tape stand out in the minds of the jury. Unquestionably, it will dominate the evidentiary scene. This court is greatly concerned that its dominating effect will distract the jury from its proper consideration of other issues they will be called on to decide. The court can conceive of no way in which the defendant can possibly depict with equal impact those periods of time during the plaintiff's recovery process when he was either free of pain or relatively speaking, free of pain. Defendant has never had the opportunity of preserving such periods and being able to present them in such a dramatic way. In this court's judgment, no amount of testimony from the attending physician, nurses, etc., could possibly offset the dramatic effect of the audio-video tape in question.

This court, weighing the probative value against the prejudicial probability, on balance, finds that the probative value is substantially outweighed and over-shadowed by the danger of unfair prejudice and rules that the film must not be allowed in evidence. The court is mindful, in making this ruling, that not only will the plaintiff be available to testify, but the doctor, the wife, and the therapist. There is nothing to keep them from testifying as to the pain and suffering which they witnessed, or which they believed to be true because of the subjective symptoms emanating from the plaintiff himself. It is, of course, admissible.

 The 19 photographs which plaintiff proposed to offer into evidence and which show the area of injuries received by the plaintiff, are, in the opinion of this court, admissible. Unless the parties can agree on such things as formality of proof, the date, the exposure, etc., the photographer will be present. Such photographs have historically been admitted by both federal and state courts in South Carolina, usually without objection.

Defendant has proposed that the photographs not go into the jury room. This was not argued before the court at the recent motion hearing. Counsel will submit, within ten days from the date of this Order, memoranda on authorities on whether or not these photographs, if admitted, can be, should be or only may be denied to the jury on whether such would be prejudicial.

The motion of defendant in limine is granted as to the video tape, and denied as to the 19 photographs.

AND IT IS SO ORDERED.

---

7. This court has previously condoned use of video tapes, but infrequently.