Filed 2/16/22  McCuistion v. County of Tulare CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN MCCUISTION et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF TULARE,<br><br>    Defendant and Respondent. | F080284<br><br>(Super. Ct. No. VCU276084)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Christopher Lionel Haberman for Plaintiffs and Appellants.

Deanne H. Peterson, County Counsel, Kathleen A. Taylor and Stephanie R. Smittle, Deputy County Counsel, for Defendant and Respondent.

-ooOoo-

Plaintiffs sued the County of Tulare (County) and others for personal injuries and wrongful death suffered in a traffic accident at an intersection next to an elementary school.  Plaintiffs alleged County was liable for a dangerous condition of public property and negligence per se.  County demurred, contending the intersection, which had no marked crosswalks and was controlled by a two-way stop, was not a dangerous condition

when used with due care. (Gov. Code, § 830, subd. (a))[1] County also contended it was immune from liability for failing to provide additional regulatory and warnings signs pursuant to sections 830.4 and 830.8. The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal.

Plaintiffs appealed, contending they properly alleged that the intersection's configuration as a two-way stop and its other characteristics qualified as a "concealed trap" or had invited public reliance. They also alleged County had actual notice of the intersection's dangerous condition because of 26 previous accidents, including one fatality. As to negligence per se, plaintiffs contend they adequately alleged County failed to mark the intersection with pedestrian crosswalks and warnings in violation of a mandatory duty imposed by Vehicle Code section 21368.

First, we conclude plaintiffs failed to allege physical damage, deterioration, or defects or other physical characteristics of the intersection that created a concealed trap or otherwise rendered it dangerous. Thus, they failed to state a cause of action based on a dangerous condition of public property. Second, based on the plain language of Vehicle Code section 21368, we conclude it does not create a mandatory duty to establish crosswalks near schools and, therefore, the negligence per se claim fails. Third, we conclude plaintiffs have not shown they could cure these defects if granted leave to amend.

We therefore affirm the judgment of dismissal.

## FACTS

Plaintiffs in this action are John McCuistion, Kimberly Parriera, and their minor sons, Jovani and Jayden. Plaintiffs assert claims individually and as successors in interest to Jayden, who died after the accident.

---

[1] Unlabeled statutory references are to the Government Code.

The defendants are County, Joe Garza, and Amelia Flores.[2] The car that struck McCuistion's vehicle was owned by Garza and was driven by Flores with Garza's permission.

The children attended Sundale Union Elementary School, which is located on the northwest corner of the intersection of Road 140 (Lovers Lane) and Avenue 240 (Prosperity Avenue) in an unincorporated area of County. The intersection of Lovers Lane and Prosperity Avenue was not an all-way stop, but rather a two-way stop. Vehicles traveling east and west on Prosperity Avenue were directed to stop at the intersection by signs, not lights. Northbound and southbound traffic on Lovers Lane were not directed to stop. County, the public entity that controls the intersection, posted "School Zone – 25 MPH" signs near the school. However, there were no pedestrian crosswalks and no "SLOW – SCHOOL XING" warning painted on Lovers Lane at the intersection.

Before the accident in this case, the intersection of Lovers Lane and Prosperity Avenue was the site of more than 26 automobile accidents in which 34 people were injured, one fatally. Based on this history, plaintiffs allege County had actual notice of the dangerous character of the intersection long before the accident involving plaintiffs.

Shortly after 6:30 a.m. on November 27, 2017, McCuistion was driving his sons to school, traveling northbound on Lovers Lane. The sun had not risen, the weather was rainy and overcast, and the roadway was wet. McCuistion stopped at the intersection and waited to make a left-hand turn onto westbound Prosperity Avenue. McCuistion yielded to Lovers Lane's southbound traffic and, once he perceived that traffic had cleared, began a left-hand turn across the southbound lane. He did not see Flores approaching the intersection in the southbound lane. She was driving a grey vehicle in excess of 65 miles

---

**2**      Flores and Garza were dismissed from this case in December 2019 and are not parties to this appeal.

3.

per hour and without any headlights on. Before McCuistion's vehicle cleared the intersection, it was struck by Flores, knocked upside down, and propelled on its roof into a nearby irrigation canal.

McCuistion and his sons were injured in the collision. Jayden sustained severe head trauma, and died at Valley Children's Hospital on December 5, 2017, as a consequence of those injuries.

Following the accident, County's board of supervisors conducted a study of the collision history of the intersection. Based upon the study's findings, the board passed a resolution to reconfigure the intersection. It was converted to an all-way stop with "School Zone Ahead" flashing beacons on Lovers Lane. In addition, a no stopping zone was placed across the street from the elementary school on Prosperity Avenue.

## PROCEEDINGS

In October 2018, plaintiffs filed their initial complaint against County, Flores, and Garza, alleging general negligence on the part of County in the design and maintenance of the intersection, as well as intentional tort, and negligence per se.

In July 2019, after multiple orders sustaining demurrers with leave to amend, plaintiffs filed a third amended complaint (TAC), the operative complaint in this appeal. The TAC alleged County was liable for general negligence and intentional tort due to the dangerous condition of the intersection and for negligence per se. The TAC alleged that the dangerous condition of the intersection was created by (1) the extensive traffic either travelling on Prosperity Avenue across Lovers Lane or turning onto Prosperity Avenue across traffic on Lovers Lane to pick up and drop off children at the school; (2) the failure to provide proper warnings, including a properly marked crosswalk across Lovers Lane; (3) the posting of a two-way stop at the intersection, which invited the public's reliance on same; and (4) the failure to warn the public of concealed dangers at the intersection, which dangers were evident from previous accidents at the intersection.

4.

The TAC also alleged County owed a statutory duty of care to students of the elementary school and their parents to provide safe ingress and egress from the school grounds on County's roads. The TAC alleged this duty, codified in Vehicle Code section 21368, required school zone pedestrian crosswalks painted in yellow along with the warning, "SLOW SCHOOL XING."

In August 2019, County demurrered to the TAC. County asserted a dangerous condition had not been alleged with the requisite particularity and Vehicle Code section 21368 did not mandate the installation of a school pedestrian crosswalk on Lovers Lane.

In September 2019, the trial court sustained the demurrer without leave to amend. The court determined that the dangerous condition alleged in the TAC was limited to County's failure to provide sufficient regulatory traffic control signals and that no physical deficiency in the intersection was alleged. The court concluded that County was statutorily immune under sections 830.4 and 830.8 from liability for failure to erect stop signs and traffic signals at the intersection; any failure of County to provide signs or signals in and around the accident intersection did not constitute a "concealed trap" subjecting County to liability; and plaintiffs' "invited reliance" theory of liability was unsupported by allegations of a condition that caused the drivers to be unaware of each other or caused their misconduct as they drove through the intersection. The court also concluded that the plain language of Vehicle Code section 21368 did not create a mandatory duty to establish a marked pedestrian crosswalk at the intersection, which defeated the negligence per se theory of liability.

The trial court entered a judgment of dismissal based on its order sustaining County's demurrer to the TAC without leave to amend. Plaintiffs timely appealed.

## DISCUSSION

I.  STANDARD OF REVIEW

When a general demurrer is sustained without leave to amend, this court applies two separate standards on appeal. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

5.

First, we review the complaint de novo to determine whether it states facts sufficient to constitute a cause of action, which is a question of law. (*Ibid.*; *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 876 [whether facts alleged state a cause of action is a question of law].) We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) We treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*)

Second, the question of leave to amend requires us to "decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank*, *supra*, 39 Cal.3d at p. 318.) If there is a reasonable probability of a cure, "the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)

Plaintiffs, as appellants, bear the burden of demonstrating that the trial court erred in concluding no cause of action was stated or in denying leave to amend. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["burden is on an appellant to demonstrate … an error that justifies reversal]; *Blank*, *supra*, 39 Cal.3d at p. 318 [burden of demonstrating a reasonable possibility of curing the pleading's defect "is squarely on the plaintiff"].)

II.    NEGLIGENCE PER SE

A.    <u>Overview of Relevant Statutes</u>

The Government Claims Act (§ 810 et seq.) was enacted in 1963 to provide a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts. (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326.) Section 815 eliminated all common law tort liability for public entities by stating such entities are not liable for an injury " '[e]xcept as otherwise provided by statute.' " (*Cavey*, *supra*, at p. 326.) Accordingly, County, as a public entity, can only be held liable

in tort based on a specific statute, either declaring the public entity to be liable or at least creating a specific duty of care on the part of the public entity. (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 (*Eastburn*).)[3]

The statutory foundation for Plaintiffs' negligence per se theory is section 815.6, which provides: "Where a public entity is under a *mandatory duty* imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Italics added.)

The California Law Revision Commission's comment to section 815.6 states the section "declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. *Alarid v. Vanier*, 50 Cal.2d 617, 327 P.2d 897 (1958) (setting forth general rule); *Lehmann v. Los Angeles City Bd. of Educ.*, 154 Cal.App.2d 256, 316 P.2d 55 (1957) (applying rule to public entity)." (Recommendation Relating to Sovereign Immunity, No. 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 840.) The "familiar rule" mentioned in this comment is California's negligence per se doctrine, which is codified in Evidence Code section 669.[4] (See *Ramirez v. Nelson* (2008) 44 Cal.4th 908, 918.)

---

[3]    Civil Code section 1714, which codified certain common law tort principles, does not apply to public entities. (*Eastburn*, *supra*, 31 Cal.4th at p. 1183.) Civil Code section 1714, subdivision (a) provides in part: "Everyone is responsible, not only for the result of his or her willful acts, but also for any injury occasioned to another by his or her want of ordinary care or skill in the *management of his or her property* or person .…" (Italics added.)

[4]    Evidence Code section 669 provides in relevant part, "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or

B. <u>Statutory Violation Alleged</u>

The TAC's negligence per se cause of action alleges that County "owed a statutory duty of care to the students and parents of Sundale Union Elementary School to provide for safe ingress and egress from the school grounds on the county roads. This duty is codified in Vehicle Code section 21368, which requires statutory school zone pedestrian crosswalk-markings for the crosswalks contiguous to Sundale Union Elementary School. School zone crosswalk markings must be painted in yellow with a warning painted on the pavement, 'SLOW – SCHOOL XING.' " The TAC also alleges County violated this statutory duty by failing to provide pedestrian crosswalks and warning signs and, therefore, breached its duty of care to plaintiffs.

C. <u>Interpretation of Vehicle Code Section 21368</u>

The first issue we address in analyzing plaintiffs' negligence per se cause of action is whether plaintiffs have properly interpreted Vehicle Code section 21368 as imposing a "mandatory duty" as that term is used in section 815.6. This issue presents a question of statutory construction. The process of resolving such a question begins with the words of the statute itself and gives them their usual and ordinary meaning. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) The relevant wording of Vehicle Code section 21368 states:

> "Whenever a marked pedestrian crosswalk has been established in a roadway contiguous to a school building or the grounds thereof, it *shall* be painted or marked in yellow as *shall* be all the marked pedestrian crosswalks at an intersection in case any one of the crosswalks is required to be marked in yellow.… There *shall* be painted or marked in yellow on each side of the street in the lane or lanes leading to all yellow marked crosswalks the following words, "SLOW – SCHOOL XING," except that such words *shall not* be painted or marked in any lane leading to a crosswalk at an intersection controlled by stop signs, traffic signals, or yield

property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to her person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

8.

right-of-way signs. A crosswalk *shall not* be painted or marked yellow at any location other than as required or permitted in this section."

The terms "shall" and "shall not" are italicized because those terms are used to designate mandatory obligations. (See Veh. Code, § 15 [" '[s]hall' is mandatory"].) We conclude the wording of Vehicle Code section 21368 is not ambiguous. Under the plain and ordinary meaning of the words, it does not create a mandatory duty *to establish* a crosswalk at every intersection contiguous to school grounds. Instead, the phrase "[w]henever a marked pedestrian crosswalk has been established" identifies a condition that must exist before the mandatory duty to paint crosswalks yellow arises.[5] In other words, the mandatory duty to use yellow paint to mark a crosswalk comes into existence only after the decision has been made to establish the crosswalk in a roadway contiguous to school grounds.

This interpretation of Vehicle Code section 21368 does not conflict with the definition of a crosswalk set forth in Vehicle Code section 275.[6] Furthermore, it is consistent with Vehicle Code section 21106, which provides:

> "(a) Local authorities, by ordinance or resolution, *may establish* crosswalks between intersections. [¶] (b) Local authorities *may install* signs at or adjacent to an intersection directing that pedestrians shall not cross in a crosswalk indicated at the intersection. It is unlawful for any pedestrian to cross at the crosswalk prohibited by a sign."

---

[5] This condition and another must be satisfied before there is a mandatory duty to mark the warning "SLOW – SCHOOL XING" at the crosswalk. The second condition is that the lane leading to the intersection is not "controlled by stop signs, traffic signals, or yield right-of-way signs." (Veh. Code § 21368.)

[6] Vehicle Code section 275 defines a crosswalk as either: "(a) That portion of a roadway included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of such lines from an alley across a street. [¶] [Or] (b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

The use of "may" in this section unambiguously demonstrates decisions to establish crosswalks and decisions to install signs are committed to the discretion of local authorities. (See Veh. Code, § 15 [" 'may' is permissive"].)

In addition, the references to a "marked crosswalk" and "any unmarked crosswalk at an intersection" in Vehicle Code sections 21950 and 21951[7] demonstrates that not all crosswalks are marked and implies the decision to mark a crosswalk is discretionary, not mandatory.

Based on the wording of the foregoing provisions of the Vehicle Code, we conclude Vehicle Code section 21368 did not impose a mandatory duty to provide crosswalks at the intersection. Thus, we further conclude the TAC has not alleged a cause of action for negligence per se because a "mandatory duty" is an essential element of a claim for negligence per se against a public entity. (§ 815.6; see Evid. Code, § 669, subd. (a).) Therefore, the trial court properly sustained the demurrer to the cause of action for negligence per se.

D.     Leave to Amend

Next, we consider whether the trial court erred in denying plaintiffs leave to amend their cause of action asserting negligence per se. Our discussion begins with a review of the principle governing the grant of leave to amend.

1.     *Applicable Principles*

To carry their burden of demonstrating the denial of leave to amend was error, plaintiffs must show there is a reasonable possibility that the defects in the negligence per

---

[7]     Vehicle Code section 21950 provides: "(a) The driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within *any marked crosswalk* or within *any unmarked crosswalk at an intersection*, except as otherwise provided in this chapter."

Vehicle Code section 21951 provides: "Whenever any vehicle has stopped at a *marked crosswalk* or at *any unmarked crosswalk at an intersection* to permit a pedestrian to cross the roadway the driver of any other vehicle approaching from the rear shall not overtake and pass the stopped vehicle."

se cause of action could be cured by amendment. (*Blank*, *supra*, 39 Cal.3d at p. 318.) A plaintiff's showing of a reasonable possibility of curing the defects may be made in either the trial court or the appellate court. (See *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may meet burden of demonstrating an amendment would cure a pleading's legal defect for the first time on appeal].) "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746, see Code Civ. Proc., § 472c, subd. (a).)

" 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] ... The plaintiff must clearly and specifically set forth ... factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]' [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491, quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.) As described below, plaintiffs have not shown a reasonable possibility of alleging that County violated a mandatory statutory duty and, thus, was negligent per se.

2.      *Plaintiffs Have Not Shown an Ability to Cure the Defects*

Plaintiffs' opposition to County's demurrer to the TAC did not address how the negligence per se cause of action could be amended. Similarly, their appellants' opening brief did not address possible amendments to the negligence per se claim.

In contrast, plaintiffs' reply brief asserts that they have "learned that there had been a crosswalk that ran across [Lovers Lane] just north of [Prosperity] Avenue [] near the eastern entrance to the school." They further assert that the crosswalk allowed children to cross Lovers Lane to the entrance of the school from where they had been dropped off by their parents and the crosswalk was removed for safety reasons after a

11.

vehicle struck a child in the crosswalk sometime before the Flores-McCuistion accident. Plaintiffs contend these facts demonstrate County had involved itself in protecting the children and parents entering and exiting the school from traffic on the roadways and undercuts County's claim that it had no duty to add a proper crosswalk or other safety measures. Plaintiffs recognize that Vehicle Code section 21106 uses discretionary language for the establishment of crosswalks, but contend their "position is that once County took control of the traffic safety at the school, adding and then removing the crosswalk at the eastern entrance, its duty was converted from discretionary to mandatory, and it was now obliged to add a highly visible crosswalk at the intersection as required and other traffic safety measures. (Veh. Code, § 21368.)"

We reject plaintiffs' contention about the conversion of a discretionary decision into a mandatory duty. First, the contention is not supported by a citation to any authority. Second, it is not consistent with the provision addressing the removal of marked crosswalks, a provision not acknowledged in plaintiffs' appellate briefs. Vehicle Code section 21950.5, subdivision (a) provides: "An existing marked crosswalk may not be removed unless notice and opportunity to be heard is provided to the public not less than 30 days prior to the scheduled date of removal. In addition to any other public notice requirements, the notice of proposed removal shall be posted at the crosswalk identified for removal." Thus, local authorities have the discretionary authority to remove marked crosswalks if they follow the requirements for notice to the public and an opportunity to be heard. (See *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1191–1192 [Veh. Code, § 21950.5 does not impose liability on a public entity for injuries sustained by pedestrians who are struck in an intersection where crosswalk markings have been removed without the entity first providing the statutory public notice].) Accordingly, we conclude an amendment asserting the removal of the marked crosswalk would not assert the violation of a "mandatory duty" for purposes of section 815.6.

12.

Plaintiffs also refer to Vehicle Code section 21372 as the source of a mandatory duty to provide traffic safety controls. That statute provides in part: "The Department of Transportation and local authorities *shall*, with respect to highways under their respective jurisdictions, establish and promulgate warrants to be used as guidelines for the placement of traffic control devices near schools for the purpose of protecting students going to and from school." (Veh. Code, § 21372, italics added.) This statute was addressed in *Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, a case in which a first grader was struck by a car and injured as she walked home after school. (*Id.* at p. 796.) The plaintiff argued that guidelines in the School Area Pedestrian Safety manual, "along with Vehicle Code section 21372 (requiring the Department of Transportation and 'local authorities' to promulgate traffic control guidelines for school areas) and [Vehicle Code] section 21373 authorizing school districts to request other agencies to install traffic control devices, impose[d] a mandatory duty on [the California Highway Patrol]." (*Searcy*, *supra*, at p. 801.) The court of appeal concluded this argument was not persuasive and stated:

> "The recommendatory, nonmandatory quality of the traffic control *guidelines* in the safety manual is self evident. [Citation.] Although these advisory materials can be utilized by governmental agencies to improve student safety, the authority they provide is discretionary; they do not impose mandatory duties upon School District or CHP within the meaning of Government Code section 815.6." (*Searcy*, *supra*, 177 Cal.App.3d at p. 801.)

Based on this precedent, we also conclude that Vehicle Code section 21372 does not impose a "mandatory duty" on local authorities such as County for purposes of section 815.6. Therefore, plaintiffs have not demonstrated an amendment referring to Vehicle Code section 21372 would cure the failure of their negligence per se cause of action to identify a mandatory duty violated by County.

In sum, we conclude the additional factual allegations set forth in the appellants' reply brief, along with the references to Vehicle Code section 21106, 21368, 21372, and

13.

21373, do not carry plaintiffs' burden of demonstrating a reasonable possibility that they could cure the defect in their negligence per se cause of action and allege County violated a mandatory duty. (See *Blank*, *supra*, 39 Cal.3d at p. 318 [burden of demonstrating a pleading's defect could be cured is squarely on the plaintiff].) Therefore, the demurrer to that cause of action was properly sustained without leave to amend. (*Ibid.*)

III. DANGEROUS CONDITION OF PUBLIC PROPERTY

A. Pleading Liability for a Dangerous Condition

The TAC alleges County is liable for negligence and intentional tort because the accident and resulting injuries were caused by a dangerous condition of public property.

Section 835 is the exclusive potential basis for a public entity to be held liable for the condition of public property. (*Brown v. Poway Unified School District* (1993) 4 Cal.4th 820, 829.) Section 835 requires a plaintiff to plead that (1) a dangerous condition existed on the public property at the time of the injury; (2) the dangerous condition proximately caused the plaintiff's injury; (3) the condition created a reasonably foreseeable risk of the kind of injury sustained by the plaintiff; and (4) the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it. (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439 (*Brenner*).)

Under California's general rule for pleading statutory causes of action, " 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.' " (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) Therefore, a claim alleging a dangerous condition "may not rely on generalized allegations [citation] but must specify in what manner the condition constituted a dangerous condition." (*Brenner*, *supra*, 113 Cal.App.4th at p. 439)

14.

B.     Definition of a Dangerous Condition

Section 830, subdivision (a) defines " '[d]angerous condition' " as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (See *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 147.)  A condition is not dangerous "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."  (§ 830.2.)

A "dangerous condition" exists when public property is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself, or when the property possesses physical characteristics in its design, location, features, or relationship to its surroundings that endanger users.  (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 131.)  Under the foregoing principles, a public entity may be liable "even where the immediate cause of a plaintiff's injury is a third party's negligent or illegal act (like [Flores's] grossly negligent driving) if some physical characteristic of the property exposes its users to increased danger from third party negligence or criminality.  [Citation.]  But it is insufficient to show only harmful third party conduct, like the conduct of a motorist....  There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff."  (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347 (*Cerna*), citing *Zelig*, *supra*, 27 Cal.4th at pp. 1135–1136.)  Consequently, the status of the intersection as dangerous "does *not* depend on whether [McCuistion and Flores] were actually exercising due care but on whether the condition

15.

of the property posed a substantial risk of injury to persons who *were* exercising due care." (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 760.)

### C. Application to Definition to the TAC's Allegations

Our application of the definition of a dangerous condition focuses on whether plaintiffs alleged (1) a defect in the physical condition of the property and (2) a causal connection between that defect and the conduct that resulted in the accident. (See *Cerna*, *supra*, 161 Cal.App.4th at p. 1347.) First, we consider what was omitted from the TAC. Second, we address why the facts alleged in the TAC are insufficient to plead the existence of a dangerous condition.

#### 1. Failure to Allege Damage, Deterioration, or Other Physical Defect

Our independent review of the TAC has not located any allegations that the intersection or surrounding property was damaged, deteriorated, or otherwise physically defective. (See *Mixon v. Pacific Gas & Electric Co.*, *supra*, 207 Cal.App.4th at p. 131; *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 301, 303 [pothole in crosswalk was a defect constituting a dangerous condition].) In other words, the TAC has not identified "some physical characteristic of the property expos[ing] its users to increased danger from third party negligence." (*Cerna*, *supra*, 161 Cal.App.4th at p. 1347.) Examples of physical characteristics that increase the danger of using a road include "blind corners, obscured sightlines, elevation variances, or any other unusual condition that ma[kes] the road unsafe when used by motorists and pedestrians exercising due care." (*Brenner*, *supra*, 113 Cal.App.4th at pp. 440–441.)

The TAC also lacks any allegation of the necessary causal connection. More specifically, the TAC does not identify any physical damage to, or defect in the physical condition of, the intersection that caused Flores to speed with her lights off in the darkness and rain. Similarly, the TAC does not connect McCuistion's failure to perceive Flores's oncoming vehicle to a physical condition of the intersection or explain how such

16.

a condition would render the intersection unsafe even when it was used in a reasonable manner, with due care by motorists. Therefore, the TAC failed to allege facts showing there was a defect in the physical condition of the intersection and a causal link between that defect and the accident. (See *Cerna*, *supra*, 161 Cal.App.4th at p. 1348.)

Plaintiff challenges the validity of the principle that "[t]here must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff." (*Cerna*, *supra*, 161 Cal.App.4th at p. 1348, citing *Zelig*, *supra*, 27 Cal.4th at pp. 1135–1140.) Plaintiff relies on *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707 (*Ducey*) and *Baldwin v. State of California* (1972) 6 Cal.3d 424 (*Baldwin*) to argue that a defect in the physical condition of the property, such as a pothole or obstruction, is not needed before there is a duty to protect the public against dangers. In *Ducey*, the Supreme Court stated that the statutory language "refutes the state's argument that it is under no 'duty' to protect the public against dangers that are not created by physical defects in public property." (*Ducey*, *supra*, at p. 717.)

In *Ducey*, the plaintiffs were injured when a vehicle crossed a freeway median and collided with the plaintiff's vehicle. (*Ducey*, *supra*, 25 Cal.3d at p. 711.) The jury found the state liable based on its failure to provide a median barrier at the accident site. (*Ibid*.) The Supreme Court affirmed, concluding the state could be liable for failing to erect a median barrier to protect freeway drivers from the serious injuries inherent in cross-median accidents. (*Id*. at p. 715; see *Cornette v. Dept. of Transportation* (2001) 26 Cal.4th 63, 67 [triable issues of fact regarding state's loss of design immunity for failing to install a median barrier].)

In *Baldwin*, the plaintiff was injured while waiting to make a left-hand turn on a heavily traveled four-lane highway without a separate turn lane and his car was rear-ended and pushed into on-coming traffic. (*Baldwin*, *supra*, 6 Cal.3d at p. 427.) The trial court granted the state summary judgment based on design immunity. (*Id*. at p. 430.) The Supreme Court reversed. (*Id*. at p. 440.) The court disapproved two of its earlier

17.

decisions and concluded a public entity does not retain its design immunity where the plan or design of a public improvement becomes dangerous in its actual operation due to changed conditions. (*Id.* at pp. 426–427.) The court stated that "the governmental entity may not, ostrich-like, hide its head in the blueprints, blithely ignoring the actual operation of the plan. Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard." (*Id.* at p. 434, fn. omitted.)

We conclude *Baldwin, Ducey* and the median-barrier cases are distinguishable from this case because plaintiff's theory of a defective design is based on the failure to install stop signs on Lovers Lane. When, as here, the theory of defective design involves stop signs, the immunity set forth in section 830.8 applies and liability for a dangerous condition will not arise without some physical defect. (E.g., *Brenner*, *supra*, 113 Cal.App.4th at pp. 440–441 [order sustaining demurrer affirmed].)

### 2.      *Allegation of Extensive Traffic*

The TAC alleges "[t]he dangerous condition was the extensive traffic traveling on [Prosperity Avenue] across [Lovers Lane] and traffic turning onto [Prosperity Avenue] across traffic on [Lovers Lane] in order to pick up and drop off children … before and after school without the benefit of the warnings that are required by statute. (Veh. Code § 21368.)" Initially, we note that Vehicle Code section 21368 did not require warnings and a marked crosswalk at the intersection. (See pt. II.C., *ante*.) Therefore, the existence of a dangerous condition cannot be based on the failure to provide the warnings and crosswalk markings set forth in Vehicle Code section 21368.

In addition, the allegation of extensive or heavy traffic, in and of itself, is insufficient to allege a dangerous condition. (*Brenner*, *supra*, 113 Cal.App.4th at p. 440.) In *Brenner*, the court stated that the volume and speed of traffic would not permit a finding of a dangerous condition in the absence of an additional allegation about the

street's physical characteristics that created a substantial risk to its users. (*Ibid.*) "Many of the streets and highways of this state are heavily used by motorists and bicyclists alike. However, the heavy use of any given paved road alone does not invoke the application of Government Code section 835." (*Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 7 (*Mittenhuber*).)

Another deficiency in the allegations about the extensive traffic at the intersection of Prosperity Avenue and Lovers Lane is the lack of any allegation showing causation. In other words, the TAC does not show how the extensive traffic, or even a single other vehicle, was a factor in causing the collision between Flores's car and McCuistion's vehicle. Instead, the main causes of the accident were Flores speeding without headlights and McCuistion's failure to see the oncoming vehicle before turning into its path.

### 3. Flores's Failure to Exercise Due Care

The TAC alleges that an actual and proximate cause of the accident was Flores's negligent conduct. Our Supreme Court has recognized that third party misconduct by itself, unrelated to the condition of the property, does not constitute a dangerous condition for which a public entity may be held liable. (*Zelig*, *supra*, 27 Cal.4th at p. 1134.) "[A]ny property can be dangerous if used in a sufficiently improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.] 'If [] it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830 subdivision (a).' [Citation.]" (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196 (*Chowdhury*).)

At the time of the accident, Flores had not turned on her vehicle's headlights and was exceeding the posted speed limit. The TAC does not allege how Flores's failure to turn on her vehicle's headlights or her exceeding the posted speed limit was related to the

condition of Lovers Lane or the intersection. As a result, the TAC has not alleged facts showing with the requisite particularity a causal connection between the condition of Lovers Lane or the intersection and Flores's failure to exercise due care. (See *Zelig, supra*, 27 Cal.4th at p. 1134.) Therefore, the allegations about Flores's failure to exercise due care are insufficient to establish the existence of a dangerous condition.

### 4. *Allegations of a Concealed Trap*

Section 830.8 states: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings, or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

The first sentence of section 830.8 sets forth a rule of immunity for the failure to provide appropriate *warning* signs. (See 1 Van Alstyne et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2020) §§ 12.76–12.77, pp. 12-109 to 12-112.)[8] In contrast, the second sentence of section 830.8 limits the immunity by providing a rule of conditional liability "when a warning sign or signal is necessary to warn of a concealed trap." (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.78, p. 12-112 [concealed trap exception to immunity].) The concealed trap exception has been applied in many cases. (See *Cameron v. State* (1972) 7 Cal.3d 318 [unevenly banked "S" curve on downgrade]; *Bunker v. City of Glendale* (1980) 111 Cal.App.3d 325, 328 [city liable for injury resulting from city's failure to provide a sign warning of steep grade and

---

[8] Our Supreme Court has characterized this publication as "the leading treatise on the Government Claims Act." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 655.)

20.

lack of visibility]; *Levine v. City of Los Angeles* (1977) 68 Cal.App.3d 481 [sudden narrowing of paving]; *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82 [sharp curve]; *Briggs v. State* (1971) 14 Cal.App.3d 498 [inadequate signs to warn and direct traffic away from location of threatened landslide]; *Flournoy v. State* (1969) 275 Cal.App.2d 806 [icing tendency of surface of highway bridge]; *Feingold v. County of Los Angeles* (1967) 254 Cal.App.2d 622 ["blind" intersection].)  "Thus, if the physical characteristics of the site create a hidden hazard that in the absence of suitable warning devices would not be anticipated and could endanger careful motorists or pedestrians, liability may be imposed" under the concealed trap exception to section 830.8's grant of immunity.  (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.78, p. 12-112.)

The concealed trap exception does not come into play, however, unless a "dangerous condition" under section 835 is first shown to exist.  (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.78, p. 12-113.)  In the absence of such a dangerous condition, a public entity is not liable for merely failing to provide warning signs or devices.  (*Ibid.*)  If a street is reasonably safe in its physical characteristics for foreseeable use with due care, a failure to post warnings would not be actionable.  (*Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462 [no liability for lack of sign warning of pedestrians crossing freeway]; *Durham v. City of Los Angeles* (1979) 91 Cal.App.3d 567 [no liability for failing to post warning of railroad crossing]; *Callahan v. City and County of San Francisco* (1971) 15 Cal.App.3d 374, 380 [no liability for lack of warnings of fog condition at end of roadway].)  "This 'concealed trap' statute applies to accidents proximately caused when, for example, the public entity fails to post signs warning of a sharp or poorly banked curve ahead on its road or of a hidden intersection behind a promontory, or where a design defect in the roadway causes moisture to freeze and create an icy road surface, a fact known to the public entity but not

to unsuspecting motorists [citation], or where road work is being performed on a highway." (*Chowdhury*, *supra*, 38 Cal.App.4th at pp. 1196–1197.)

The TAC alleges the intersection "constitute[d] a dangerous condition, as warnings were not properly given to traffic on [Lovers Lane] concerning east- and westbound cross-traffic on [Prosperity] Avenue" and refers to section 830.8. The TAC also alleged: "Here there were numerous warnings that could have been given by County that would have made the intersection safer and are not described in Government Code section 830.4, including but not limited to the properly marked crosswalk (Veh. Code, § 21368), 'warning cross-traffic ahead,' and speed bumps to slow traffic."

The TAC does not identify any physical characteristics of the site that created a hidden hazard that, in the absence of suitable warning devices, "would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8.) As stated earlier, the concealed trap exception applies only if a "dangerous condition" under section 835 is first shown to exist. (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.78, p. 12-113.) Here, TAC lacks allegations showing the existence of "a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8; see pt. III.C.1., *ante*.) Thus, the TAC does not adequately allege the existence of a concealed trap.

### 5. *Invited Reliance and Section 830.4 Immunity*

Section 830.4 provides a qualification to section 830, subdivision (a)'s definition of a dangerous condition by stating: "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." The regulatory signals, signs, and markings referred to in section 830.4

include regulatory traffic control signals (Veh. Code, §§ 445, 21361, 21400); pedestrian traffic control signals (Veh. Code, §§ 21456–21456.1); stop signs (Veh. Code, §§ 21354–21355); yield-right-of-way signs (Veh. Code, § 21356); and speed restriction signs (Veh. Code, §§ 21357–21359, 21400). The decision to provide the regulatory devices and markings designated by section 830.4 involves an exercise of discretionary authority of various public officers. (1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.75, p. 12-107; see *Paz v. State* (2000) 22 Cal.4th 550, 561 ["cities generally have no affirmative duty to install traffic control signals"].)

The section 830.4 immunity is expressly limited to instances in which the public entity's property is claimed to be in a dangerous condition "merely because of" a failure to provide the regulatory traffic devices listed in the Vehicle Code. (See 1 Van Alstyne et al., Cal. Government Tort Liability Practice, *supra,* § 12.75, p. 12-108.) "Merely," as used in this context appears to mean substantially the same as "solely." (*Hilts v. County of Solano* (1968) 265 Cal.App.2d 161, 174.) Therefore, a condition is not a "dangerous condition" solely because of the public entity's failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, or distinctive roadway markings as described in the Vehicle Code. (§ 830.4, *Mittenhuber*, *supra*, 142 Cal.App.3d at p. 6.) Put differently, a public entity such as County has no general duty to erect a regulatory street sign and has immunity under section 830.4 for failure to erect one. (*Mittenhuber*, *supra*, at p. 6.)

Section 830.4 would not, however, prevent the imposition of liability where a public entity exercises its discretion to install traffic signs or regulatory signals, and thereby invites public reliance on them. (*Teall v. City of Cudahy* (1963) 60 Cal.2d 431, 434 (*Teall*) [defective placement of traffic signals to control pedestrians and vehicles]; *Mathews v. State ex rel Dep't of Transp.* (1978) 82 Cal.App.3d 116 [malfunctioning traffic signals]; *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, 746 [partially obscured stop sign]; *Bakity v. County of Riverside* (1970) 12 Cal.App.3d 24, 31

23.

[stop sign in unusual and unanticipated position unlikely to be observed by motorists].) This qualification is sometimes referred to as the "invited reliance" theory. (*Teall*, *supra*, at p. 434; *Mittenhuber*, *supra*, 142 Cal.App.3d at p. 9.) However, if the malfunctioning of the regulatory device did not make the roadway dangerous to traffic, no liability is imposed. (*Chowdhury, supra,* 38 Cal.App.4th 1187 [inoperative traffic signals are transformed into stop signs by Veh. Code § 21800; such condition is not dangerous as a matter of law]; *Goodman v. Raposa* (1957) 151 Cal.App.2d 830.)

Plaintiffs argue that by establishing a two-way stop at the intersection of Lovers Lane and Prosperity Avenue, County undertook to control that intersection, and thereby invited the public to rely on the safety of that intersection, creating a dangerous condition where 830.4 and 830.8 would otherwise bar liability. Plaintiffs assert that the evidence of at least 26 prior accidents at the intersection resulting in at least 34 injuries and one prior fatality placed County on actual and constructive notice that the intersection was a dangerous condition, upon which County invited the public to rely.

The "invited reliance" theory of public entity liability is only applicable if a public entity exercises its discretion to install traffic lights, signs, and other regulatory controls, and such regulatory controls fail to function as intended, creating a defective or dangerous condition. (*Teall v. City of Cudahy, supra,* 60 Cal.2d at pp. 433–434.) Here, the TAC contains no allegations showing the accident occurred because of the failure of any installed traffic signs or regulatory controls to function as intended. First, traffic on Lovers Lane was not controlled by stop signs. Second, there are no allegations showing a failure of the stop signs on Prosperity Avenue to function as intended. In summary, the TAC fails to allege facts sufficient to support an invited reliance theory of liability.

### 6. *Other Arguments*

The TAC alleges that 26 prior accidents occurred at the intersection but provided no specific detail of any of those accidents. For instance, the TAC does not allege facts

24.

showing any of the prior accidents involved a scenario akin to the accident—that is, a vehicle turning left from northbound Lovers Lane onto westbound Prosperity Avenue. Thus, the prior accidents could have occurred at different locations of the intersection than the accident and for different reasons. Furthermore, the prior accidents may have been the result of third party negligence, not the existence of a dangerous condition. (See *Cerna*, *supra*, 161 Cal.App.4th at p. 1347 [plaintiff must identify "some physical characteristic of the property expos[ing] its users to increased danger from third party negligence"].)

In addition, section 830.5, subdivision (a) provides that "[e]xcept where the doctrine of res ipsa loquitur is applicable, the happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition." The TAC does not allege this is a res ipsa loquitor case. The mere fact that other accidents had occurred at the intersection therefore is not in and of itself evidence that the intersection constituted a "dangerous condition" for purposes of section 830, subdivision (a) or that there was any "invited reliance" by the public involved in any of the prior accidents within the meaning of section 830.4.

Plaintiffs argue further that the claimed inherent dangerousness of the intersection could have been alleviated if that intersection had been controlled by a four-way stop. In *Mittenhuber*, the court stated that "[a] city is under no affirmative duty to erect stops signs at such an intersection" (*Mittenhuber, supra,* 142 Cal.App.3d at p. 6) and cited section 830.4, which explicitly lists stop signs as a regulatory signal to which the immunity applies. Thus, accepting as true the assertion that a four-way stop at the intersection would have made it safer, that assertion does not make the two-way stop that actually existed a "dangerous condition" for purposes of section 830, subdivision (a). The possibility of greater regulatory control and warning signage always exists. That possibility is not part of the statutory definition of " '[d]angerous' condition." (§ 830, subd. (a).)

25.

The complaints filed before the TAC allege that County took subsequent remedial measures at the intersection, turning it into a four-way stop by adding regulatory controls and warning signs after the accident. The remedial measures are of no consequence to our evaluation of the intersection as it existed at the time of the accident. Section 830.5, subdivision (b) provides that "[t]he fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury."

We therefore conclude that the TAC failed to plead with particularity the facts essential to establishing the intersection constituted a dangerous condition for purposes of sections 835 and 830, subdivision (a). Consequently, the trial court properly sustained County's demurrer to the causes of action in the TAC asserting County was liable for injuries caused by a dangerous condition of public property.

D.     Denial of Leave to Amend

The final issue we consider is whether the trial court abused its discretion by denying plaintiffs leave to amend their causes of action asserting a dangerous condition of public property. The principles governing our analysis of whether leave to amend should have been granted are set forth in part II.D.1., *ante*, and are not repeated here.

Plaintiffs' opposition to County's demurrer to the TAC did not address how the causes of action asserting a dangerous condition of public property could be amended. The last sentence of the opposition simply requested that, if the trial court sustained any portion of the demurrer, "leave to amend the complaint be granted." Similarly, the opening brief did not address how the TAC could be amended. Instead, plaintiffs argued their initial complaint and all three amended complaints adequately stated causes of action that would survive a demurrer.

As described in part II.D.2., *ante*, plaintiffs' reply brief asserts facts about the removal of a marked crosswalk on Lovers Lane that could be added to their pleading if

26.

granted leave to amend. In *Sun*, *supra*, 166 Cal.App.4th 1177, a pedestrian was struck and killed while crossing a boulevard at an unmarked pedestrian crosswalk. (*Id*. at p 1180.) Her husband sued the city, alleging his wife's death was caused by the dangerous condition of the intersection. (*Ibid*.) The city successfully moved for summary judgment on the ground the intersection was not in a dangerous condition as a matter of law. (*Ibid*.) The appellate court affirmed. (*Id*. at p. 1181.)

In *Sun*, it was undisputed that the city did not provide public notice of removal of the marked crosswalk as required by Vehicle Code section 21950.5. (*Sun*, *supra*, 166 Cal.App.4th at p. 1191.) While not condoning the city's failure, the court concluded the "failure to comply with Vehicle Code section 21950.5 does not expose it to liability under Government Code section 835." (*Sun*, *supra*, at p. 1192.) Thus, the court "concluded that the intersection did not constitute a dangerous condition of public property as a matter of law." (*Id*. at p. 1193.) Alternatively, the court stated, "that even if it did City, is immune from liability under section 830.8." (*Ibid*.)

Here, plaintiffs have not asserted they could allege County violated the procedural requirements for public notice and an opportunity to be heard before deciding to remove a crosswalk from Lovers Lane. (See Veh. Code, § 21950.5.) Regardless, even if they could allege such a violation, those additional facts would not cure the defect in their causes of action asserting the intersection was a dangerous condition for purposes of section 835. We agree with the analysis in *Sun* and join its conclusion that, "[t]o the extent the lack of crosswalk markings were a factor in causing the accident, [County] is immune from liability under [section] 830.8." (*Sun*, *supra*, 166 Cal.App.4th at p. 1193.) Furthermore, the facts in plaintiffs' reply brief regarding the removal of a crosswalk once marked across Lovers Lane do not include facts that show how the removal created a "concealed trap" that would work as an exception to the immunity generally granted to County by section 830.8.

27.

In sum, the additional facts asserted in the reply brief do not carry plaintiffs' burden of demonstrating a reasonable possibility that they could cure the TAC's defects and adequately allege the existence of a dangerous condition.  (See *Blank*, *supra*, 39 Cal.3d at p. 318.)  Therefore, the demurrer to the cause of action based on a dangerous condition of public property was properly sustained without leave to amend.  (*Ibid*.)

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.276(a)(5).)


FRANSON, ACTING P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

28.